IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARL SCHNEIDER, individually, and as Trustee of
THE CARL AND NARCELLE SCHNEIDER TRUST,
and MARY SCHNEIDER, as Trustee of THE CARL
AND NARCELLE SCHNEIDER TRUST,

                         Plaintiffs,

     v.

CHRIS SCHNEIDER and HYBRID CAR STORE,
INC., f/k/a INTERNATIONAL MOTOR WERKS,
INC., and HONDA OF LA CROSSE, INC.,

                    Defendants.

OPINION and ORDER

19-cv-980-jdp

---

    This case involves a dispute between shareholders of a closely held family-owned corporation. The minority shareholder is a revocable trust established as part of the parents' estate plan, and the matter is complicated by years of bad blood between the father who founded the corporation and the son who now runs it and is the majority shareholder. The plaintiffs are trustees of the trust, Carl Schneider and his daughter Mary Schneider. They contend that defendant Chris Schneider—Carl's son and Mary's brother—has engaged in self-serving mismanagement of the company, thus breaching his duties to the trust as the minority shareholder.

    Both sides move for summary judgment, which the court will mostly deny. Plaintiffs have shown that defendant Chris Schneider has breached his duty to the trust in some ways, but the most significant alleged breaches will have to be decided by a jury. The court will require supplemental briefs to determine precisely which issues will require resolution at trial.

BACKGROUND

The court will refer to Carl Schneider and Mary Schneider as "plaintiffs." They bring the case as trustees of The Carl and Narcelle Schneider Trust, which the court will refer to as "the trust." The defendants are Chris Schneider and Hybrid Car Store, Inc., which is the current name of the family-owned corporation. The company is named as a defendant for the purpose of obtaining an accounting and a judicial dissolution, but it isn't accused of wrongdoing. The court will refer to Chris Schneider as "defendant" and the Hybrid Car Store as "the company." The court will use first names as necessary to distinguish individual members of the family.

The parties dispute whether Chris's actions represent legitimate business decisions in the interests of the company or whether his actions demonstrate unauthorized self-dealing. But the basic background facts are undisputed.

Carl formed the company in 1976, under the name "International Motor Werks" to operate a Honda dealership in La Crosse and to sell and service used cars. After college, Chris started working for his father's car dealerships, and he ultimately became a manager of the company and was granted an ownership interest in it. From 1987 to 1997, defendant owned 25 percent of the company, Carl owned 37.5 percent of the company, and Narcelle Schneider— Carl's wife and defendant's mother—owned the remaining 37.5 percent. In 1997, Carl and Narcelle created the trust as part of their estate plan, and they transferred their 37.5 percent interests into the trust, which made the trust the majority shareholder with 75 percent of the stock in the company. The estate plan also included several life insurance policies on Carl and on Chris, so that, among other objectives, Chris would be able to purchase the trust's interest in the company for $1.125 million when Carl died.

2

In 2008, Narcelle removed her stock from the trust and gifted it to defendant, so that defendant owned 62.5 percent of the stock and the trust held 37.5 percent. The 2008 transfer triggered a legal feud among the family members that endures today. Carl challenged the validity of the transfer in state court. The state court held that Chris had not violated his fiduciary duties and it declined to unwind the transfer of stock to Chris. But the court found that the transfer violated agreements related to Carl and Narcelle's estate plan, and it awarded damages of $562,500 against defendant.

Beginning in 2018, defendant negotiated the sale of substantially all the assets of the company. The sale closed in 2019. The terms of the sale included: a purchase price of $3 million, to be paid over five years; a consulting agreement that paid defendant $200,000 per year for there years; and a lease of the dealership property for $40,000 a month. The dealership property is owned by the trust, which insisted on the lease amount. But defendant negotiated a side deal, which he did not disclose to plaintiffs, that the company would provide a $15,000 per month "rental assistance" payment to the purchaser. After the sale, defendant changed the name of the company to "The Hybrid Car Store," through which defendant sells the few used cars that were excluded from the asset sale.

Plaintiffs now accuse defendant of breaching his fiduciary duty to the trust and violating various provisions of the Wisconsin business corporation law, Wis. Stat. Ch. 180, wrongly taking money from the company, structuring a sale of the company's assets to enrich defendant at the trust's expense, and refusing to distribute dividends in bad faith.

Additional facts will be introduced in the analysis section below.

3

ANALYSIS

**A. Defendant's motion for partial summary judgment**

Defendant moves for summary judgment on the ground that plaintiffs don't have the right to sue on behalf of the trust without Narcelle.

This is the second time that defendant has raised that issue. In a motion to dismiss, defendant contended that Narcelle was a "necessary party" under Federal Rule of Civil Procedure 19. Dkt. 5. The court denied the motion without prejudice because a party's capacity to sue on behalf of a trust is governed by Rule 17, not Rule 19, and the parties incorrectly focused on the question whether Narcelle has a sufficient interest in the trust, which is irrelevant when determining capacity to sue. Dkt. 18 (citing *Doermer v. Oxford Fin. Grp., Ltd.*, 884 F.3d 643, 648 (7th Cir. 2018)). Defendant now raises the issue under Rule 17.

The first question under Rule 17 is what law governs the determination of a party's capacity to sue. Under Rule 17(b)(3), a plaintiff's capacity to sue on behalf of a trust is "determined . . . by the law of the state where the [federal district] court is located." Under Wis. Stat. § 701.0703(1), co-trustees may act "by majority decision." There is no dispute that Wisconsin law would authorize plaintiffs to litigate on behalf of the trust without Narcelle's participation or consent.

Defendant says that California law should govern, citing a choice-of-law provision in the trust agreement, which says that the agreement's "validity and construction shall be governed by the laws of the State of California." Dkt. 35-2, Article XII, § F. He also cites Wis. Stat. § 701.0107(1), which directs the court to apply "[t]he law of the jurisdiction designated in the trust instrument" when determining "the meaning of and effect of the terms of the trust." Finally, he cites *Bush v. National School Studios, Inc.*, for the proposition that Wisconsin courts

apply choice-of-law provisions in the absence of a showing that doing so would violate an important public policy of the state. 139 Wis. 2d 635, 407 N.W.2d 883 (1987). If California law governs, defendant says that all three trustees must sue on behalf of the trust, citing §15620 of the California Probate Code, which states: "Unless otherwise provided in the trust instrument, a power vested in two or more trustees may only be exercised by their unanimous action."

It's not clear that the question of plaintiffs' capacity to sue involves the "validity" or "construction" of the trust agreement, which is how the trust agreement itself invokes California law. But plaintiffs don't raise that issue, so the court will assume that the trust agreement calls for the application of California law. The court will further assume that California law is controlling and that filing a lawsuit is the type of "power" to which § 15620 applies.[1]

But, as both sides recognize, § 15620 includes an implied exception that allows less than unanimous action when it is in the best interest of the trust. The text of § 15620 doesn't include such an exception, but federal district courts have read in the exception from the Restatement (Second) of Trusts § 194. *See Erwin v. Fin. Life Servs., LLC*, No. SACV0901463DOCMLGX, 2010 WL 11596536, at *2 (C.D. Cal. Aug. 30, 2010); *Swinden v. Vanguard Group, Inc.*, No. C 09–3816 SI, 2009 WL 3415376 (N.D. Cal. Oct. 21, 2009). Relying on the Restatement is consistent with the practice of California state courts,

---

[1] Plaintiffs cite *King v. Steward*, which questioned whether the unanimity requirement under § 15620 applies to the "power of trustees to bring suit to preserve the property of a trust." No. E052121, 2014 WL 6610491, *3 (Cal. Ct. App. Nov. 21, 2014). As defendant points out, Rule 8.1115 of the California Rules of Court prohibits either the parties or the court from relying on unpublished opinions like *King*.

which have continued to invoke the Restatement on matters of trust law despite the enactment of a detailed statutory scheme. *See, e.g.*, *Lonely Maiden Productions, LLC v. Golden Tree Asset Management, LP*, 201 Cal. App. 4th 368, 379 (2011) ("California trust law is essentially derived from the Restatement Second of Trusts." (citations omitted)).

The court concludes that it is in the best interest of the trust to allow plaintiffs to sue on behalf of the trust without Narcelle because the suit carries no potential disadvantage to the trust. This case does not involve a decision to sell property or make an investment that could adversely affect the trust or the absent trustee. Nor does this case involve a dispute among the trustees themselves in which it is difficult to determine what the trust's best interest is. Rather, plaintiffs are attempting to protect the trust from what they say are multiple breaches of fiduciary duty. If the court were to grant defendant's motion, any harm to the trust (which is to say, to the trust beneficiaries, which include Carl, Narcelle, and, as contingent beneficiaries, the other Schneider children) would be left unremedied. The court does not mean to suggest that plaintiffs necessarily have strong claims. Regardless whether plaintiffs prevail on the merits, the purpose of the lawsuit is to protect and preserve the assets of the trust, which can only be in the best interests of the trust and its beneficiaries.

Defendant doesn't identify any way in which allowing plaintiffs' claims to proceed is contrary to the best interest of the trust. In his opening brief, he says only that plaintiffs don't allege that they ever tried to get Narcelle to join before filing the lawsuit. But defendant doesn't explain why that is dispositive or even relevant. Perhaps if Narcelle were challenging plaintiffs' authority now, their failure to join her would be a factor to consider. But Narcelle submitted an affidavit on plaintiffs' behalf, stating that she believed she had delegated her authority to file lawsuits on behalf of the trust to Mary. Dkt. 50. Defendant challenges the validity of that

6

delegation, both under the terms of the trust and under California law. But the court need not resolve those disputes. The important point is that Narcelle is aware of the lawsuit, she has explained why she didn't join it, and she doesn't object to it.

In his reply brief, defendant says that the grantors of the trust could have included a provision that expressly allows a majority of trustees to take action on behalf of the trust. Again, he doesn't explain how the absence of such a provision informs an analysis of whether this suit is in the best interest of the trust. Perhaps if the trust itself expressly required unanimity, that would be an argument that the grantors had already determined what was in the trust's best interest. But the trust agreement includes no such provision. Although the agreement limits the situations in which a trustee may act alone, *see* Dkt. 35-2, Article XIII, § C, it is silent on whether a majority or unanimity is required to file a lawsuit or take any other action.

The court will deny defendant's motion for partial summary judgment.

## B.  Plaintiffs' motion for partial summary judgment

### 1.  Overview of the claims

Plaintiffs contend that defendant breached his fiduciary duty to the trust or otherwise violated the Wisconsin business corporation law by engaging in the following conduct:

1) loaning himself company funds for the purpose of paying a personal judgment and then falsely asserting that he was entitled to be indemnified for almost $400,000 in legal fees related to that judgment;

2) failing to properly notice a shareholder meeting;

3) when selling the company's assets, choosing the offer that resulted in a lower purchase price for the assets but a larger personal payment to defendant;

4) concealing from the trust that the sale agreement involved $15,000 in monthly "rent assistance" to be paid by the company to the buyer; and

5) failing to distribute the trust's share of the sale's proceeds.

Plaintiffs didn't include claims 3) or 4) in their complaint. Instead, they raised a different claim about the terms of the sale, alleging that defendant intentionally structured the payments for the sale so that they would stretch out over five years, with "the expectation that Carl would not live to the time when the final balloon payment is due." Dkt. 1, ¶ 78. Plaintiffs don't say whether they are continuing to assert their original claim, and they don't explain why they are asserting two new claims without seeking leave to amend their complaint. But defendant doesn't object to the new claims, so the court will consider them. Defendant also doesn't contend that any of plaintiffs' claims should have been brought as a derivative action, so the court need not consider that question. *See Ewer v. Lake Arrowhead Ass'n, Inc.*, 2012 WI App 64, ¶¶ 17-19, 342 Wis. 2d 194, 817 N.W.2d 465.

## 2. Legal standard

Many of plaintiffs' claims are based on a theory that defendant had fiduciary duties to the trust because he was an officer and director of the company and the trust was a minority shareholder. The elements of a claim for breach of fiduciary duty are straightforward: 1) the defendant owed the plaintiff a fiduciary duty; 2) the defendant breached that duty; and 3) the breach of duty caused the plaintiff's damage. *Yates v. Holt-Smith*, 2009 WI App 79, ¶¶ 19–20, 319 Wis. 2d 756, 768 N.W.2d 213. Defendant doesn't dispute that he had a fiduciary duty to the trust. Rather, the focus of the parties' arguments is on whether he breached that duty and whether plaintiffs have shown damages.

### 3.  Loan and indemnification

#### a.  Background[2]

In 2014, Carl sued defendant and the company in state court, contending that Narcelle's 2008 stock transfer to defendant was a breach of a previous contract that prohibited any transfers of company stock before Carl's death. Carl also alleged that defendant breached his fiduciary duties to the company by withholding documents, failing to properly notice meetings, and improperly increasing his own compensation. On April 11, 2018, the court entered judgment, declining to invalidate the stock transfer but directing defendant to pay Carl $562,500 for the gifted stock. The court dismissed all the claims for breach of fiduciary duty.

On May 11, 2018, defendant issued a shareholder notice about a May 15 meeting to consider: (1) approving a loan to defendant for $129,607 at an interest rate of 4.5 percent; (2) approving a loan to defendant for $151,589.61 "at the applicable rate in effect on the date of the loan," Dkt. 65, ¶ 39; and (3) approving a $281,303.39 dividend distribution to defendant. The total of these three amounts is $562,500. Carl objected at the meeting on behalf of the trust, but defendant approved the loans and distribution anyway.

Defendant repaid the loans from the company through what he calls an "internal transfer." He claimed that he was entitled to indemnification from the company for legal fees related to the state-court lawsuit, totaling $395,574.81. This indemnification amount was applied to the two loan balances, and the rest, an additional $87,488.76, was paid out to defendant from the company.

---

[2] Accompanying plaintiffs' reply brief were "additional proposed findings of fact" that weren't directly responsive to any of the facts proposed by defendant. Dkt. 66. Defendant didn't have an opportunity to respond to those newly proposed facts, so the court won't consider them.

### b.  Merits

Plaintiffs say that defendant violated the law by both: (1) approving company loans to pay his state-court judgment; and (2) purporting to repay the loans by claiming that he was entitled to be reimbursed for legal expenses related to the state-court action.

Plaintiffs say that the loans were both a breach of fiduciary duty and a violation of Wis. Stat. § 180.0832, which limits the circumstances under which a corporation may lend money to a director. Plaintiffs' argument under the common law is limited to a conclusory statement in their opening brief that the loans were "self-dealing." Dkt. 46, at 14. But the Wisconsin Supreme Court has rejected the views that a company loan to a corporate officer is a per se breach of fiduciary duty, *see Davies v. Meisenheimer,* 254 Wis. 419, 37 N.W.2d 93 (1949), so plaintiffs aren't entitled to summary judgment on their common-law claim in the absence of a more developed argument about why the circumstances of the loans qualify as a breach.

But plaintiffs' statutory claim is more straightforward. Section 180.0832 prohibits a corporation from loaning money to a director unless: (1) the transaction is approved by shareholders other than the director himself; or (2) the corporation's board of directors approves the loan. It's undisputed that the loans at issue in this case don't qualify for either of those exceptions.

Defendant's only response to the § 180.0832 claim is that it is "moot" because defendant repaid the loans. Dkt. 56, at 21. This contention dovetails with plaintiffs' next claim, which is that defendant's method of repayment was also a breach of fiduciary duty. Plaintiffs contend that defendant was not entitled to repay the loans through an internal transfer because he was not entitled to indemnification for his legal expenses from the state-court lawsuit.

In their opening brief, plaintiffs' only argument regarding indemnification is that defendant violated the company bylaws, but they don't explain how, and they don't explain why a violation of the bylaws qualifies as a per se breach of fiduciary duty. In his opposition brief, defendant says that he was entitled to indemnification under Wis. Stat. § 180.085(1), which requires a corporation to "indemnify a director or officer, to the extent that he or she has been successful on the merits or otherwise in the defense of a proceeding, for all reasonable expenses incurred in the proceeding if the director or officer was a party because he or she is a director or officer of the corporation." Defendant says that § 180.085(1) applies because he was successful in defeating Carl's claims for breach of fiduciary duty in defendant's role as an officer of the company.

Neither side says so expressly, but it appears to be undisputed that defendant sought indemnification for *all* of his legal fees related to the state-court case, even though defendant was sued—successfully—in his personal capacity on the breach-of-contract claims. The statute is silent on an officer's indemnification rights in that situation, and neither side makes an argument that the statute does or does not require indemnification for a case that involves a mix of claims such as the state-court suit here.

Plaintiffs argue instead in their reply brief that defendant didn't comply with the procedural requirements in Wis. Stat. § 180.0855 for an indemnification under § 180.0851. They cite *Ehlinger v. Hauser*, 2010 WI 54, ¶ 103, 325 Wis. 2d 287, 785 N.W.2d 328, in which the court held that an officer who failed to comply with the requirements in § 180.0855 wasn't entitled to indemnification.

If plaintiffs are correct that defendant didn't comply with § 180.0855 and that defendant wasn't entitled to indemnification, then plaintiffs *were* harmed by defendant's

violation of Wis. Stat. § 180.0832 because defendant never properly repaid the loan, so that claim wouldn't be "moot" as defendant suggests. But it is a stretch to say that a violation of the procedural requirements in § 180.0855 is automatically a breach of a fiduciary duty.

Regardless of the strength of plaintiffs' statutory or common-law claim, the court won't grant summary judgment to plaintiffs on those claims because plaintiffs said nothing about § 180.0855 in their opening brief, so defendant hasn't had an opportunity to respond to the procedural argument. But this is an issue that likely can be resolved as a matter of law, so it makes sense to give the parties an opportunity to brief the issue so before sending the case to a jury.

### 4. Sale of the company's assets

#### a. Background

On September 24, 2018, defendant issued a shareholder notice about a meeting to discuss the sale of substantially all of the company's assets, including the dealership and most of its vehicles, but not the company itself. Plaintiffs objected in writing on behalf of the trust, contending that the notice was inadequate. However, at a meeting on September 27, the trust voted with defendant to approve the asset purchase agreement, under which the buyer would pay $3,000,000 over a period of five years for the assets and $600,000 to defendant for consulting services over a period of three years.

The asset purchase agreement did not include a secret side agreement between the company and the buyer related to rent. The trust owned the property on which the dealership was located, and the buyer wanted to keep the dealership on the same land. But the buyer didn't want to pay the trust's asking price for rent, which was $40,000 a month. So defendant

agreed on the company's behalf to pay the buyer $15,000 a month in what the agreement calls "rent assistance." Defendant didn't disclose the side agreement to plaintiffs before the sale.

### b. Notice of shareholder meeting

Plaintiffs say that defendant's notice of the September 27, 2018 meeting was deficient with respect to both timing and content. First, plaintiffs say that defendant failed to comply with the requirement in Wis. Stat. § 180.1202(2) to provide 20 days' notice of the meeting. Second, plaintiffs say that defendant failed to comply with Wis. Stat. § 180.1320(1), which requires a notice about a potential sale to include information about the shareholders' right to dissent.

The undisputed facts show that defendant violated both statutes. Defendant says that there is a genuine dispute whether he violated § 180.1202 because Mary testified in her deposition that she believed as of August 3, 2018, that defendant had "struck a deal" to sell the company. Dkt. 56, at 22. But it is irrelevant whether one of the plaintiffs may have suspected that a sale was imminent. The statute requires 20 days' notice of the meeting, not that shareholders have notice of a possible sale.

Defendant doesn't dispute that he violated § 180.1320, but he says that plaintiffs have "waived" any claim under that statute because they didn't end up dissenting. But that is the whole point of § 180.1320: to inform shareholders of their rights so that they can decide whether to exercise them.

That being said, the court cannot grant summary judgment on these claims. As noted in the previous section, it's not clear what the remedy would be for a violation. Plaintiffs don't contend that they *were* ignorant of their rights, and they don't identify any harm they suffered as a result of either violation. And they say nothing about either statute in their reply brief. So

the court will ask plaintiffs to clarify whether they continue to seek judgment on these claims; and if so, what harm they suffered, and what remedy they are seeking.

### c. Offers to buy

The buyer of the company's assets initially made two alternative offers: (1) $3,150,000 million for the assets and $450,000 to defendant in consulting fees; or (2) $3,300,000 for the assets with no consulting fees for defendant. The final deal was $3,000,000 for the assets and $600,000 for defendant's consulting services.

In their opening brief, plaintiffs contend that defendant breached his fiduciary duty to the trust by choosing "the option that paid himself more and the company less." Dkt. 46, at 14. In his opposition brief, defendant says that his actions were reasonable because the final deal gave the trust benefits other than a higher price. Specifically, the agreement requires the buyer to pay $3,000,000 in five years, but the $3,300,000 offer was based on a ten-year payment plan. The offer defendant chose benefits the trust, he says, "given the age of the shareholders, the future desire to conclude business, and the increased risk of non-payment that comes with longer terms." Dkt. 56, at 14.

Defendant says that the business judgment rule precludes liability for his decision to structure the deal as he did. He cites *Data Key Partners v. Permira Advisers LLC,* in which the court relied on the business judgment rule to reject a claim that the directors of a corporation breached their fiduciary duty to the shareholders by accepting an offer to buy the company that gave the directors certain benefits, "including the continuing ability to serve on the board, vesting of certain stock options, indemnification, and liquidity for retirement." 2014 WI 86, ¶ 44, 356 Wis. 2d 665, 849 N.W.2d 693. Defendant also says that plaintiffs forfeited this

claim because they voted to approve the sale despite knowing about the consulting fees. Dkt. 56, at 15 (citing *Davies*, 254 Wis. 419 at 421–23).

Plaintiffs don't respond to any of these arguments in their reply brief. For example, they don't explain how they can reconcile the claim in their complaint that the payment plan is already too lengthy with their position now that defendant should have chosen the offer with the even longer payment plan. The court will construe their silence to mean that they are withdrawing their motion for summary judgment on this claim, but it will ask plaintiffs to explain whether they intend to press the issue at trial. The court will also ask plaintiffs to explain why they didn't forfeit the claim by voting to approve the sale.

### d. Side agreement on rent

Plaintiffs contend that defendant breached his fiduciary duty to the trust by failing to disclose the side agreement with the buyer that would require the company to pay the buyer $15,000 a month towards the buyer's $40,000 rent payment to the trust. Wisconsin courts have long recognized that fiduciaries have a duty to disclose relevant facts. *See, e.g., Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 50, 284 Wis. 2d 307, 700 N.W.2d 180; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 135, 377 N.W.2d 605, 609 (1985); *Killeen v. Parent*, 23 Wis. 2d 244, 251, 127 N.W.2d 38, 42 (1964).

Defendant doesn't dispute that the side agreement he had with the buyer is both relevant and the type of information that a fiduciary would generally have the duty to disclose. After all, as a shareholder in the company, the trust has an interest in knowing in advance what obligations the company is taking on. Defendant's only argument in response to this claim is to raise the equitable defense of unclean hands. Specifically, he says that the dealership's lease with the trust was set to expire in 2018, and the trust refused to extend it unless the dealership

15

agreed to pay $40,000 in monthly rent, up from $12,500. Dkt. 64, ¶¶ 58–59. But the buyer wouldn't pay more than $25,000, and defendant believed that the trust wouldn't accept anything less than $40,000. *Id.*, ¶ 60. Defendant says that a secret side agreement was the only way to secure the sale.

The doctrine of unclean hands applies when the party seeking relief has engaged in "substantial misconduct," unlawful or otherwise wrongful, that caused the harm about which the party now complains. *See Timm v. Portage Cty. Drainage Dist.*, 145 Wis. 2d 743, 752–53, 429 N.W.2d 512 (Ct. App. 1988). Defendant hasn't met that standard. Defendant's theory is that he was entitled to conceal relevant information because the trust was demanding an unreasonable price for rent. Defendant cites no evidence about what the market value of the property actually was, but even if the court assumes that the trust was asking for substantially more than the market rate, defendant cites no authority for the view that the trust was violating the law or that driving a hard bargain qualifies as "substantial misconduct."

If the court were to accept defendant's view, it would allow any fiduciary facing a difficult choice to hide important facts if he concluded that the ends justify the means. Defendant cites no examples in which any court excused a fiduciary from his duty to disclose on the ground that the beneficiaries were better off being kept in the dark. If defendant believed that securing the deal was vital, he could have offered to pay the additional $15,000 out of his own pocket. But he was not entitled to mislead the trust and then harm its financial interest by sticking the company with a $15,000 monthly bill.

The remaining question on this claim is whether plaintiffs have shown damages. Unfortunately, plaintiffs didn't address that issue in their opening brief, so the court can't grant summary judgment on the claim. In their reply brief, plaintiffs say that they are entitled to "at

16

least" $60,562.50, which represents 37.5 percent (the trust's share of the company) of the rent subsidies paid by the company. Of course, that assumes that defendant isn't entitled to a setoff of any kind. There appears to be little dispute that the sale would have fallen through if defendant had disclosed the side agreement. So the company wouldn't have been on the hook for $15,000 a month if defendant had disclosed the side agreement, but the trust wouldn't be able to receive any benefits from the sale either. Should that play into a determination of damages? Neither side addresses this issue, so the court will allow the parties to brief it.

### 5. Distribution of sale proceeds

As of December 31, 2020, the company had received at least $1,217,490 in payments from the buyer. Plaintiffs contend that defendant has breached his fiduciary duty by failing to declare and distribute as dividends the proceeds of the sale.

Plaintiffs acknowledge the general rule from *Reget v. Paige* that shareholders do not have a right to a dividend "until the profits of a corporation are declared as a dividend." 2001 WI App 73, ¶ 15, 242 Wis. 2d 278, 626 N.W.2d 302. But they invoke the exception to the general rule suggested in *Reget* applicable to a director acting in bad faith. *See id*. *See also Yates v. Holt-Smith,* 2009 WI App 79, ¶¶ 27–29, 319 Wis. 2d 756, 768 N.W.2d 213 (affirming decision that director acted in bad faith by refusing to distribute dividend).

In support of a finding of bad faith, plaintiffs rely on three facts: (1) the company has at least $1,850,000 in cash; (2) the company's only purposes now are to sell the remaining 14 vehicles that the buyer didn't purchase, meet future warranty obligations, continue receiving payments from the buyer, and distribute proceeds of the sale to the shareholders; and (3) the company is receiving approximately $32,000 a month in payments, which the company's own expert said is sufficient to cover the expenses of its limited operations. Dkt. 65, ¶¶ 85–87. And

17

these facts would be viewed in the context of the estate-plan agreement that, upon Carl's death, defendant can purchase his shares of the company for $526,500, far less than Carl's proportionate share of the company's cash holdings. So defendant has a financial incentive to hold excess cash rather than paying a dividend now.

A reasonable jury could infer bad faith from this evidence, but that finding is not one the court will make at summary judgment. A court will rarely grant summary judgment to the plaintiff on issues of the defendant's intent. *See Day v. City of Baraboo*, No. 06-C-188-C, 2007 WL 5633174, at *6 (W.D. Wis. Jan. 31, 2007). To reach that result, the court would have to conclude that plaintiffs' evidence was so strong that any reasonable jury would be compelled to find that defendant is acting in bad faith. Plaintiffs have cited no case in which a court made a similar determination at summary judgment, and the court isn't persuaded that doing so is appropriate in this case. This claim will have to be resolved by the jury.

### 6. Judicial dissolution

Plaintiffs devote one page of their opening brief to their argument that the company should be dissolved under Wis. Stat. § 180.14320(2)(b). Citing *Jorgensen v. Water Works, Inc.*, 218 Wis. 2d 761, 582 N.W.2d 98 (Ct. App. 1998), plaintiffs say that the court may dissolve a corporation for breaches of fiduciary duty, and that defendant's breaches are sufficiently serious to warrant dissolution in this case. But many issues related to the alleged breaches remain unresolved, so it would be premature to find as a matter of law that plaintiffs are entitled to dissolve the company. The court will deny summary judgment on this claim.

## C.  Next steps

Some of the unresolved issues in this case appear to be more legal than factual, so it makes sense to give the parties an opportunity to file supplemental briefs on issues that can be decided as a matter of law, including:

- whether the indemnification complied with § 180.085(1) and § 180.0855; if not, whether the violations of § 180.0832 and § 180.0855 were a breach of fiduciary duty;

- what the proper remedy is for a violation of § 180.0832 and § 180.0855;

- whether plaintiffs are still asserting their claims under § 180.1202 and § 180.1320(1); if so, what harm did they suffer, and what is the appropriate remedy;

- whether plaintiffs are continuing to assert a claim that defendant breached his fiduciary duty by choosing the wrong offer to buy the company's assets; if so, whether plaintiffs forfeited that claim by voting to approve to approve the sale;

- what plaintiffs' damages are for defendant's failure to disclose his side agreement regarding rent.

The parties should also address an issue that the court left open in the order on the motion to dismiss, which is whether Carl is entitled to any relief in his personal capacity for any of the alleged violations. Dkt. 18.

Unfortunately, the need for additional briefing means that the trial will need to be postponed. So the court will strike the trial date and related deadlines. The court will set a new trial date, if necessary, after resolving the issues discussed in the supplemental briefs. Although settlement may not be likely, the court will set a briefing schedule that gives the parties an opportunity to first engage in settlement negotiations, which the court encourages. If the parties are in need of a mediator, they may contact the clerk's office to schedule a session with Magistrate Judge Peter Oppeneer.

ORDER

IT IS ORDERED that:

1. Defendant Chris Schneider's motion for summary judgment, Dkt. 33, is DENIED.

2. Plaintiff Carl Schneider and Mary Schneider's motion for summary judgment, Dkt. 41, is DENIED.

3. The parties may have until June 10, 2021, to file supplemental briefs on the issues discussed in this opinion. They may have until June 24, 2021, to file responses. There shall be no replies.

4. The trial date and all remaining deadlines are STRUCK. The court will reset the schedule after resolving the issues raised in the supplemental briefs, if necessary.

Entered April 22, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

20