IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARL SCHNEIDER, individually, and as Trustee of
THE CARL AND NARCELLE SCHNEIDER TRUST,
and MARY SCHNEIDER, as Trustee of THE CARL
AND NARCELLE SCHNEIDER TRUST,

                  Plaintiffs,

    v.

CHRIS SCHNEIDER and HYBRID CAR STORE,
INC., f/k/a INTERNATIONAL MOTOR WERKS,
INC., and HONDA OF LA CROSSE, INC.,

                  Defendants.

OPINION and ORDER

19-cv-980-jdp

---

This case arises out of a family dispute over a company now called Hybrid Car Store, Inc. Plaintiffs Carl Schneider and Mary Schneider are trustees of the Carl and Narcelle Schneider Trust, which is a minority shareholder of the company. They contend that the majority shareholder—defendant Chris Schneider—breached his fiduciary duty to the trust in numerous ways. The court will refer to Carl and Mary Schneider as "plaintiffs" and Chris Schneider as "defendant" because the company is named as a defendant solely for the purpose of obtaining an accounting and judicial dissolution.

Plaintiffs moved for summary judgment on most of their claims. The court decided some legal issues in plaintiffs' favor but denied the motion because plaintiffs had failed to address several key issues. The court invited the parties to file supplemental briefs to clarify the scope of plaintiffs' claims, and the parties have complied with that request. This order resolves some additional issues in plaintiffs' favor, dismisses some of plaintiffs' claims, and identifies the issues that remain for trial.

BACKGROUND

The court provided a full statement of the facts in the summary judgment opinion, *see* Dkt. 71, so only a brief overview is provided here.

Carl Schneider (defendant's father) formed the company now called Hybrid Car Store in 1976. Defendant later obtained a 25 percent interest in the company. The remaining 75 percent was owned by a trust created by Carl and Narcelle Schneider (defendant's mother) until Narcelle removed her stock from the trust and gifted it to defendant in 2008. A state court later found that the transfer violated agreements related to Carl and Narcelle's estate plan, and the court awarded Carl $562,500 against defendant. But the state court allowed defendant to keep the transferred shares, leaving him with 62.5 percent of the company. Defendant then borrowed money from the company to pay a portion of the judgment and later "repaid" his loans by charging his legal expenses from the state-court case to the company.

In 2018, defendant sold most of the company's assets, leaving only a few vehicles that defendant continued to offer for sale online, but he didn't dissolve the company. As of December 31, 2120, the company had $1,850,000 in cash, but defendant had not distributed any of the proceeds from the sale to the shareholders.

Plaintiffs filed this lawsuit, asserting claims for breach of fiduciary duty, civil theft, and violations of the Wisconsin business corporation law. Plaintiffs also seek equitable relief in the form of judicial dissolution, appointment of a receiver, and an accounting. They moved for partial summary judgment, contending that defendant breached his fiduciary duty to the trust or violated Wisconsin's business corporation law by engaging in the following conduct:

1) loaning himself company funds for the purpose of paying a personal judgment and then falsely asserting that he was entitled to be indemnified for almost $400,000 in legal fees related to that judgment;

2) failing to properly notice a shareholder meeting;

3) when selling the company's assets, choosing the offer that resulted in a lower purchase price for the assets but a larger personal payment to defendant;

4) concealing from the trust that the sale agreement involved $15,000 in monthly "rent assistance" to be paid by the company to the buyer; and

5) failing to distribute the trust's share of the sale's proceeds.

The court asked for additional briefing on aspects of most of these claims. The court also directed the parties to address the question whether Carl was entitled to bring any claims in his personal capacity.

ANALYSIS

**A. Subject matter jurisdiction**

Before addressing the parties' supplemental briefs, the court affirms its subject matter jurisdiction over the case. The court previously determined that plaintiffs had adequately *alleged* jurisdiction, Dkt. 18, at 1, but the court didn't discuss jurisdiction in the summary judgment opinion. The court must determine at each stage of the case whether the parties have met their burden to show jurisdiction, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), so the court will do that now.

Plaintiffs rely on 28 U.S.C. § 1332, which requires proof that the plaintiffs and defendants are citizens of different states and the amount in controversy is more than $75,000. Plaintiffs plausibly alleged that amount in controversy exceeds the jurisdictional minimum, which is all they were required to do. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021).

3

Turning to plaintiffs' citizenship, the court looks at the citizenship of the trustees bringing the case rather than to the citizenship of the trust itself or its members generally. *Doermer v. Oxford Fin. Grp., Ltd.*, 884 F.3d 643, 647 (7th Cir. 2018). It's undisputed that Mary is domiciled in Oregon, Dkt. 65, ¶ 5, so she is a citizen of that state. *See Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014). But there is a question about Carl's citizenship. Carl says that he is domiciled in Florida, but he admits that the address he provided as his residence is a business, and he doesn't live at that address. Dkt. 36-1 (Carl Schneider Dep. 6:15–9:14). Rather, he's been living in California "[s]ince the COVID panedmic struck California in early 2020." Dkt. 49, ¶ 2. He doesn't say where he intended to live long term at the time he filed this lawsuit, which is the key question for determining domicile. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004); *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). However, he does still have a Florida driver's license, Dkt. 36-1 (Carl Schneider Dep. 5:12–14), which is one indicator of Florida domicile. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 733 (7th Cir. 2017).

Both defendants are citizens of Wisconsin: defendant is domiciled here, and the company is incorporated and has its principal place of business here. *Id.*, ¶¶ 10–13. It's undisputed that Carl hasn't lived in Wisconsin since 1995, Dkt. 65, ¶ 3, so it appears that plaintiffs and defendants are citizens of different states, regardless of whether Carl is a citizen of Florida or California. So the court will procced to the merits. But to create a clear record, the court will direct plaintiffs to submit supplemental evidence showing where Carl was domiciled when he filed this case, that is, where he intended to live long term as of December 2019.

## B.  Loan and legal expenses

After the state court ordered defendant to pay Carl $562,500 for the breach of contract claims, defendant borrowed approximately $280,000 from the company to help pay the judgment. He then charged the company approximately $395,000 for legal expenses related to the state-court lawsuit. Defendant applied the amount of legal expenses to his loans, resulting in defendant receiving a payment from the company in the amount of approximately $87,000.[1] Plaintiffs contend that both the loan and the charge for legal expenses were unlawful.

The court concluded in the summary judgment order that the loan violated Wis. Stat. § 180.0832, which limits the circumstances under which a corporation may loan money to an officer or director. Dkt. 71, at 10. But the question whether the trust was harmed by the violation turned on whether defendant was entitled to charge the company for his legal expenses. If he was, then the trust didn't ultimately suffer a loss that wasn't authorized, meaning that plaintiffs couldn't show a causal connection between any breach of fiduciary duty and plaintiffs' damages. *See Yates v. Holt-Smith*, 2009 WI App 79, ¶¶ 19–20, 319 Wis. 2d 756, 768 N.W.2d 213 (one element of breach-of-fiduciary claim is that breach caused damages to the plaintiff).

In their opening summary judgment brief, plaintiffs didn't identify a firm legal basis for their contention that defendant breached a fiduciary duty by charging his legal expenses to the company. In his opposition brief, defendant said that his conduct was authorized by Wis. Stat. § 180.0851(1), which requires a corporation to "indemnify a director or officer, to the extent that he or she has been successful on the merits or otherwise in the defense of a proceeding,

---

[1] Presumably, the amount was less than $115,000 ($395,000 - $280,000) because interest had accrued on the loans.

for all reasonable expenses incurred in the proceeding if the director or officer was a party because he or she is a director or officer of the corporation." Defendant argued that § 180.085(1) applied because the breach-of-contract claims weren't the only claims in the state-court lawsuit. Rather, Carl also sued defendant for breach of fiduciary duty in defendant's capacity as an officer or director of the company, and the state-court resolved those claims in defendant's favor. In their reply brief, plaintiffs argued for the first time that defendant wasn't entitled to indemnification under § 180.0851(1) because he didn't comply with the procedural requirements in Wis. Stat. § 180.0855. But defendant didn't have an opportunity to respond to that argument, and plaintiffs didn't explain why a procedural violation would entitle them to damages. As a result, the court asked the parties to brief the following issues:

1) whether the indemnification complied with § 180.0851(1) and § 180.0855;

2) if not, whether the violations of § 180.0832 and § 180.0855 were a breach of fiduciary duty; and

3) what the proper remedy is for a violation of § 180.0832 and § 180.0855.

In his supplemental brief, defendant contends that § 180.08051(1) permitted him to charge *all* of his legal expenses from the state-court litigation to the company. Plaintiffs contend that § 180.0851(1) didn't permit defendant to charge *any* of those legal expenses to the company. Neither of these extreme positions is persuasive. The plain language of the provision suggests that a director or officer is entitled to indemnification "to the extent that he or she has been successful" on claims filed against him in his capacity as "a director or officer of the corporation." Wis. Stat. § 180.0851(1). It's undisputed that defendant prevailed on the claims brought against him in his capacity as a director or officer of the company. So § 180.0851(1) permitted indemnification of expenses related to those claims. But the remaining claims for breach of contract were not brought against defendant in his capacity as a director or an officer,

6

and he didn't prevail on those claims. The two sets of claims raised distinct issues and were essentially separate "proceedings" under § 180.0851(1). So that provision didn't authorize indemnification for legal expenses related to the personal-capacity claims.

As for the procedural requirements in § 180.0855, defendant points out that those requirements don't apply to an indemnification that is authorized under § 180.0851(1). Rather, those requirements apply only when the director or officer is seeking indemnification for litigation that doesn't qualify under § 180.0851(1). *See* Wis. Stat. § 180.0855 (setting forth for procedures when "the director or officer [is] seeking indemnification under s. *180.0851(2),*" which applies only when § 180.0851 doesn't apply) (emphasis added). Defendant is relying solely on § 180.0851(1) to justify the indemnification, so it doesn't matter whether he complied with the requirements that apply to other provisions.

In their supplemental reply brief, plaintiffs contend for the first time that defendant was required to comply with the procedural requirements in § 180.0851(3) and that he didn't comply with those requirements. But plaintiffs didn't raise that issue in their complaint, any of their summary judgment briefs, or their opening supplemental brief, so they forfeited the issue.

In any event, the court isn't persuaded that defendant failed to comply with § 180.051(3), at least not in a way that qualifies as a breach of fiduciary duty. Section 180.0851(3) only requires the officer or director seeking indemnification to "make a written request to the corporation." It's undisputed that defendant sent plaintiffs a notice of a meeting during which they would "consider" defendant's "demand for indemnification of legal fees, costs, and other expenses incurred for litigation brought against him in his role as officer and director both past and present." Dkt. 74-1. Plaintiffs contend that the notice doesn't satisfy

7

§ 180.0851(3) because it isn't framed expressly as a "request." But plaintiffs don't explain the importance of the precise word used. The notice identifies indemnification as an issue to be "consider[ed]" by the board. In any event, indemnification is mandatory when § 180.0851(1) applies. *See* Wis. Stat. § 180.0851(1) ("A corporation *shall* indemnify a director or officer . . . .") (emphasis added). So the distinction between a notice and a request is semantic.

To sum up, the court concludes that defendant violated § 180.0832 by approving a company loan to himself without the approval of the other shareholders. He was permitted under § 180.0851(1) to charge the company for legal expenses for the official capacity claims against him but not for the personal capacity claims.

The fact that defendant violated § 180.0832 and § 180.0851(1) doesn't necessarily mean that he breached a fiduciary duty to the trust: "[N]ot every legal claim arising out of a relationship with fiduciary incidents will give rise to a claim for breach of fiduciary duty." *Zastrow v. J. Commc'ns, Inc.*, 2006 WI 72, ¶¶ 28–30, 291 Wis. 2d 426, 718 N.W.2d 51 (internal quotation marks omitted). Plaintiffs must show more than just negligence or incompetence; "a fiduciary's duty of loyalty involves a state of mind." *Id.*, ¶ 30.

As noted in the summary judgment opinion, determining a party's intent as a matter of law generally isn't appropriate at the summary judgment stage. Dkt. 71, at 18. In any event, it isn't necessary to decide now whether defendant's statutory violations were negligent or intentional or qualify as a breach of fiduciary duty. The primary relief that plaintiffs seek for these violations is for defendant to "repay to the Corporation the funds that he improperly caused the Corporation to pay him." Dkt. 76, at 4.[2] Even if the statutory violations don't

---

[2] Plaintiffs do not ask for a direct payment. That seems appropriate because defendant charged his legal expenses to the company, not to plaintiffs. As the court noted in the summary judgment opinion, defendant doesn't contend that any of plaintiffs' claims should have been

qualify as breaches of defendant's fiduciary duty, the court can discern no basis for allowing defendant to keep funds that don't belong to him, and defendant doesn't identify one.

In addition to damages, plaintiffs ask the court to dissolve the company because of defendant's alleged breaches. But the court already denied plaintiffs' motion for summary judgment on their dissolution claim, Dkt. 71, at 18, and the court didn't invite further briefing on that claim. Plaintiffs are free to argue at trial that defendant's violations of §§ 180.0832 and 180.0851 support their dissolution request, but the court declines to resolve that claim now.

As for the amount of money that defendant owes the company for the improper indemnification, neither side has provided evidence or argument about how much of defendant's legal expenses are attributable to the personal capacity claims rather than to the official capacity claims. The parties will have to present evidence on that issue at trial.

## C.  Notice of shareholder meeting

Plaintiffs moved for summary judgment on their claims under § 180.1202(2) and § 180.1320(1) that defendant didn't give them statutorily required notice before selling the company's assets. The court concluded that defendant violated Wis. Stat. § 180.1202(2) by failing to provide 20 days' notice of the meeting where the sale was approved. And he violated Wis. Stat. § 180.1320(1) by failing to provide plaintiffs with a notice that included information about the shareholders' right to dissent to the sale. But the court denied summary judgment on these claims because plaintiffs didn't identify any harm they suffered from the inadequate notice, they didn't identify an appropriate remedy for the violations, and they didn't even

brought as a derivative action, so the court doesn't consider that question.

address the claims in their reply brief. The court directed plaintiffs to address the following questions in a supplemental brief:

> 1) whether plaintiffs are still asserting their claims under § 180.1202 and § 180.1320; and
>
> 2) if so, what harm did they suffer, and what is the appropriate remedy.

Dkt. 71, at 13–14.

In their supplemental brief, plaintiffs confirm that they are still asserting claims for these statutory violations. But they still haven't identified any independent harm caused by the failures to provide statutory notice. They don't allege that they were unaware of their rights, and they don't say what they would have done differently if defendant had provided the required notice. Instead, they say that these statutory violations provide further support for their dissolution claim. Again, the court already denied plaintiffs' summary judgment motion on that claim. But plaintiffs are free to argue at trial that the violations qualify as breaches of fiduciary duty or oppressive conduct and provide grounds for judicial dissolution under Wis. Stat. 180.1430.

**D. Terms of the sale**

The buyer of the company's assets initially made two alternative offers: (1) $3,150,000 million for the assets and $450,000 to defendant in consulting fees; or (2) $3,300,000 for the assets with no consulting fees for defendant. The final deal was $3,000,000 for the assets (to be paid over five years) and $600,000 for defendant's consulting services (over a three-year period).

In their complaint, plaintiffs alleged that defendant breached his fiduciary duty to the trust by structuring the payments for the sale so that they would stretch out over five years, with "the expectation that Carl would not live to the time when the final balloon payment is

due." Dkt. 1, ¶ 78. Plaintiffs reframed the claim in their summary judgment brief, contending that defendant breached his fiduciary duty to the trust by choosing an offer that resulted in higher consulting fees for him but a lower purchase price for the company. Dkt. 46, at 14. In their reply brief, plaintiffs didn't respond to defendant's arguments that: (1) the business-judgment rule barred this claim; (2) his decision was reasonable because the lower purchase price was based on a five-year payment plan and the higher price was based on a ten-year plan; and (3) plaintiffs waived this claim by failing to object to the sale. The court asked plaintiffs to clarify whether they are continuing to assert this claim, and if so, explain why they didn't forfeit the claim.

In their supplemental brief, plaintiffs reframe this claim again, contending that "Chris breached his fiduciary duties to Plaintiffs by structuring the sale of corporate assets in such a way that it would secure for him only—and not for the other shareholder, the Trust—the payment of $600,000 in consideration for those corporate assets." Dkt. 76, at 5. In other words, plaintiffs aren't challenging the payment plan or the purchase price, only that defendant obtained fees for consulting without obtaining a commensurate benefit for the trust.

When plaintiffs reframed this claim in their summary judgment brief, the court allowed the constructive amendment of the complaint because defendant didn't object to it in his opposition brief. Dkt. 71, at 8. But defendant does object to this third iteration of the claim. *See* Dkt. 80, at 6–7. The court agrees that it is far too late for plaintiffs to amend the claim now. *See Anderson v. Donahoe,* 699 F.3d 989, 997 (7th Cir. 2012) (affirming decision to deny leave to amend at summary judgment stage). And plaintiffs still don't respond to defendant's arguments about why it was reasonable for him to choose the lower purchase price, so the court will dismiss this claim.

Even if the new claim were timely, it would fail. Plaintiffs say that they didn't forfeit the claim by voting to approve the purchase agreement because "they expected to receive a full 37.5% of the aggregate value of the asset sale, including the value of Chris's personal service contract, which, after all, was made in consideration for the purchase of corporate assets." *Id.* They cite a letter from defendant's counsel written just before the vote, which states the following:

> If the Business is sold to Dahl, then Chris will schedule another meeting to discuss and hopefully resolve the disputed items referenced in Attorney Renfro's letter dated August 21, 2018. That meeting will also include a discussion regarding the distributions of the proceeds from the sale of the Business to the shareholders of Motorwerks.

Dkt. 42-1, at 2. This letter promises a "meeting"; it says nothing about distributing the money that defendant would receive for his consulting services. Plaintiffs also fail to explain why defendant would be required to share payments for *his* services. Plaintiffs don't contend that they wanted to provide consulting services to the buyer, or, if they did, that they ever raised this issue at any time before the sale. And they don't cite evidence that the consulting services were part of a ruse to give defendant a larger share of the proceeds. Regardless of how plaintiffs frame this claim, it fails.

## E.  Rental agreement

The purchase agreement that plaintiffs voted to approve did not disclose a side agreement that defendant had with a buyer. Under that side agreement, defendant agreed to pay the buyer $15,000 a month in what the agreement calls "rent assistance," and he used company funds to make these payments.

The court concluded in the summary judgment opinion that defendant had breached his fiduciary duty to the trust by failing to disclose the side agreement. But the court couldn't

grant summary judgment to plaintiffs on this claim because they didn't explain their theory of damages. And it wasn't necessarily as simple as requiring defendant to pay all the rent assistance back to the company or giving the trust its share of a refund. This is because it appeared to be undisputed that the sale would have fallen through if defendant had disclosed the side agreement. The trust owned the property where the dealership was located, and plaintiffs insisted on a monthly rental payment of $40,000. But the buyer wouldn't pay that amount, believing it was an unreasonable rate. So if defendant had disclosed the side agreement and there had been no sale, plaintiffs would be deprived of any benefits from the sale. The court asked plaintiffs to explain how their damages should be calculated in light of the connection between the rental assistance agreement and the sale.

In their supplemental briefs, both sides now acknowledge that the rental assistance agreement was between the buyer and defendant *personally*. In other words, the agreement required *defendant*, not the company, to provide monthly rental assistance to the buyer. *See* Dkt. 73, at 6 and Dkt. 76, at 15; *see also* Amended and Restated Agreement, Dkt. 43-13, at 3 ("[Chris] Schneider shall pay $15,000 of the Rent each month."). Defendant raises this issue as part of a new argument that he wasn't required to disclose the side agreement because it didn't impose an obligation on the trust. Dkt. 73, at 6. This argument fails for two reasons.

First, the court already concluded that defendant breached his fiduciary duty by failing to disclose the obligation. Defendant's only argument in his summary judgment brief was that plaintiffs had "unclean hands" because they charged an unreasonable amount for rent. Dkt. 56, at 16–17. The court rejected this argument, and it did not invite further briefing on the issue. It's too late for defendant to assert a new defense now.

Second, defendant admits that "the Corporation ended up paying" the rent assistance. Dkt. 73, at 7. This makes the breach of fiduciary duty worse, not better. Not only did defendant fail to disclose an obligation that was being imposed on the company, he was also using company funds to pay a personal obligation.

Defendant's admission simplifies the damages calculation somewhat. As it turns out, defendant was able to close the sale without imposing any new obligations on the company. It was only *after* the sale that defendant decided to use company funds to satisfy a personal obligation. So the court need not determine how disclosure of the rent assistance might have affected the sale. The appropriate remedy is to require defendant to return the funds.

But there is still a wrinkle. Plaintiffs contend that they are entitled to 37.5 percent of the total amount that defendant took from the company for rental assistance, a figure that is based on the trust's 37.5 interest in the company. But plaintiffs don't explain why they would be entitled to any direct payments. If defendant hadn't paid that rental assistance, that would be additional money in the company's coffers, not the trust's. The trust wouldn't receive its share until there was a distribution. Plaintiffs *are* seeking a distribution in this case, but the court denied their motion for summary judgment on that issue. If plaintiffs believe that they are entitled to a direct payment on this claim, they may raise that issue in a motion in limine, citing relevant authority.

## F.  Carl's personal capacity claims

All of the claims the court has discussed so far were brought by plaintiffs in their capacity as trustees. Carl says that he is suing in his personal capacity as well, but the complaint doesn't identify any specific claims. So the court asked the parties to address the question whether Carl is entitled to any individual relief.

14

In their supplemental brief, plaintiffs still don't identify any specific claims that Carl is asserting, but they say that Carl may sue in his individual capacity because he has a "unique" interest in the case. Dkt. 76, at 18. They point to the "structure of the state court judgment," which they say will allow defendant to avoid paying the trust hundreds of thousands of dollars if Carl dies before a distribution or dissolution. *Id.* And because Carl is 87 years old, "this contingency may come to pass." *Id.* This situation may explain why Carl is particularly eager to dissolve the company. But it isn't clear why any of the cited facts would give rise to an individual claim or right, and plaintiffs cite no authority suggesting that they do. So Carl may continue with his claims in his capacity as a trustee, but the court will dismiss any claims he is asserting in his individual capacity.

## G. Jury trial versus court trial

Plaintiffs raise one other issue in their supplemental brief, which is that "none of the parties made a jury demand," so any trial will be to the court rather than a jury. Dkt. 76, at 3. Plaintiffs are correct. Although the docket indicates that this case was set for a jury trial, *see* Dkt. 16, the preliminary pretrial conference order states that "[t]rial shall be to the court," *id.* at 6. Since that order was issued, no party has asked for a jury trial. So the court will set a new scheduling conference with Magistrate Judge Stephen Crocker, with directions to set a date for a court trial and all related deadlines.

ORDER

IT IS ORDERED that:

1.  The motion for summary judgment filed by plaintiffs Carl Schneider and Mary Schneider is GRANTED on the following issues:

    a.  Chris Schneider violated § 180.0832 by approving a company loan to himself without the approval of the other shareholders.

    b.  Chris Schneider violated § 180.0851(1) by charging the company for legal expenses for claims brought against him in his personal capacity.

    c.  Chris Schneider violated Wis. Stat. § 180.1202(2) by failing to provide 20 days' notice of the shareholder meeting on September 27, 2018.

    d.  Chris Schneider violated Wis. Stat. § 180.1320(1) by failing to provide plaintiffs with a notice that included information about the shareholders' right to dissent to the sale.

    e.  Chris Schneider breached his fiduciary duty to the trust by failing to disclose rental assistance that the company was providing to a third party.

2.  Plaintiffs' motion for summary judgment is DENIED in all other respects. Their claim that Chris Schneider breached his fiduciary duties by failing to negotiate more favorable terms for the sale of the company's assets is DISMISSED with prejudice.

3.  Carl Schneider's claims brought in his individual capacity are DISMISSED with prejudice. He may continue asserting claims in his capacity as a trustee.

4.  Plaintiffs may have until December 4, 2021, to submit evidence showing where Carl Schneider was domiciled at the time he filed this lawsuit.

5.  The clerk of court is directed to set a telephone conference with Magistrate Judge Stephen Crocker to set a schedule for the remainder of the case, including a court trial.

Entered November 22, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

16