IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARL SCHNEIDER, individually, and as Trustee of
THE CARL AND NARCELLE SCHNEIDER TRUST,
and MARY SCHNEIDER, as Trustee of THE CARL
AND NARCELLE SCHNEIDER TRUST,

                     Plaintiffs,                      OPINION and ORDER

    v.

                                               19-cv-980-jdp

CHRIS SCHNEIDER and HYBRID CAR STORE,
INC., f/k/a INTERNATIONAL MOTOR WERKS,
INC., and HONDA OF LA CROSSE, INC.,

                     Defendants.

---

This case arises from long-simmering tensions among the members a family that owns a company now called Hybrid Car Store, Inc. Plaintiffs Carl Schneider and his daughter Mary Schneider are trustees of the Carl and Narcelle Schneider Trust, the minority shareholder. The defendant is Chris Schneider, the majority shareholder. He is Carl's son and Mary's brother.

The company's historical purpose was to operate a Honda dealership, but the dealership was sold off several years ago. Plaintiffs allege that Chris has abused his position as majority shareholder in ways that violate Wisconsin law and breach his duties to the trust. Plaintiffs want the company to wind down its operations and distribute the proceeds of the sale. But Chris wants to keep the company going, which plaintiffs contend is merely a ploy to line his own pockets and keep the trust's rightful share of the proceeds of the sale.

The court decided on summary judgment that Chris had violated Wisconsin corporation law and breached his duties to the trust in several ways. Questions related to remedies were left for a trial to the court. The primary issues were: the amount of plaintiffs'

damages; whether Chris's had committed civil theft in taking funds from the corporation; and whether the corporation should be dissolved.

As explained in this opinion, the court finds for plaintiffs in most respects. Plaintiffs have shown that in five specific incidents Chris has taken improper dividends or reimbursements from the corporation, and the court will order the corporation to pay corresponding dividends to the trust. The court finds that, in three of these cases, Chris acted with knowledge that the transaction was not authorized, and thus he committed civil theft. The court concludes that Chris has abused the rights of the trust as minority shareholder by wrongfully taking of funds from the company and by failing to distribute the proceeds of the sale of the dealership. The company's operations are minimal, and yet the company has retained cash far in excess of its legitimate needs. Chris has demonstrated that he is incapable of managing the company with due respect to the rights of the minority shareholder. The court will order dissolution of the company and appoint the receiver proposed by plaintiffs to oversee the winding down of its operation and the distribution of its assets.

FACTS

The court stated the undisputed background facts in the summary judgment opinion. Dkt. 71. A brief overview of the facts as established at trial is sufficient for background. Additional facts found at trial will be set out in the analysis section where those facts are pertinent.

The corporation now called Hybrid Car Store was formed by Carl Schneider in 1976, then operating under the name "Motor Works." The company owned and ran a successful Honda dealership in La Crosse, Wisconsin. Chris began working in his father's car dealerships

as a young man, and in the mid-1980s he moved to the La Crosse Honda dealership and became its general manager. In 1987, Carl granted Chris a 25 percent interest in the company. Carl and Narcelle each retained 37.5 percent interests.

In 1997, Carl and Narcelle set up an estate plan that established The Carl and Narcelle Schneider Trust, into which they put their ownership interests in the corporation and other assets, notably the land on which the car dealership was located. The estate plan included agreements restricting the transfer of stock and establishing buy-out values of the owner's interests that would apply in the event of Carl's or Chris's death.

In 2008, Narcelle removed her company stock from the trust and gave it to Chris, thereby making Chris the majority shareholder with a 62.5 percent interest. The transfer of stock to Chris exacerbated family resentments and lead, in 2014, to litigation in La Crosse County court. In April 2018, the La Crosse County court held that Chris had not breached his fiduciary duties to the corporation or the minority shareholder, but that the stock transfer violated the stock-transfer restrictions in Carl and Narcelle's estate plan. Dkt. 43-2. The court entered judgment for the trust and against Chris personally for $562,500 (representing the value of the ownership interest that Chris had improperly received from Narcelle), $56,250 (representing dividends that Chris had wrongfully withheld from the trust), and interest. The court reaffirmed the buy-out values of the ownership interests, following the outline of the estate plan: on Carl's death, Chris was to buy out his interest for $562,500; on Chris's death, the trust was to buy out his interest for $1,062,500. (For reasons that are not entirely clear, Chris's 25 percent interest was valued at $500,000; the 37.5 percent interests owned by Carl and Narcelle were valued at $562,500 each.)

3

Chris was unable to pay or secure conventional financing for the judgment against him. So, Chris paid $562,500 to the trust with a cashier's check from the company and $56,250 with a check from the company's account. Then, over the trust's objections, Chris had the company loan him $281,196.61 and issue a dividend to him in the amount of $281,303.39 (with a corresponding dividend to the trust of $168,782.03). The combined total of the loans and the dividend to Chris was $562,500. About two years later, in June 2020, Chris had the company indemnify him for all his legal fees in defending the La Crosse County litigation, in the amount of $395,574.81. The indemnification amount was applied to Chris's outstanding loans; the rest, $87,488.76, was paid to Chris in cash. Chris did not pay back the $56,250 in any manner.

In 2018, Chris sold the dealership and substantially all of the company's assets to Dahl Automotive. For our purposes, the most pertinent terms of the sale were that Dahl would pay $3 million for the dealership's goodwill and engage Chris as a consultant for three years at a salary of $200,000 per year. The $3 million was secured by a promissory note from Dahl that provided for 59 monthly installments of $31,819.65, with a final balloon payment of $1,714,595.75, due in March 2024. At the closing in March 2019, Dahl paid additional cash of $549,277.63 for the net value of other assets.

The dealership was located on land owned by the trust, which the company had leased for $13,750 per month since 1998. The lease expired at the end of September 2018, while Chris was negotiating the sale to Dahl. The company agreed to a one-year renewal at $40,000 per month. But Dahl was willing to pay only $25,000 per month. Chris believed that the deal would fall though if the trust persisted in demanding $40,000 per month rent from Dahl, so Chris entered a secret side-agreement to subsidize Dahl's rent by $15,000 per month. Although

4

the side-agreement was between Chris himself and Dahl, Chris had the company pay the rent subsidy after the sale to Dahl.

Dahl purchased most of the dealership inventory, with the exception of about 33 specialized vehicles and some related equipment and tires that Dahl didn't want. Chris continued to maintain the vehicles and list them for sale online. By the time of trial—almost three and one-half years after the sale to Dahl—the company still had three of the vehicles and some related equipment.

As of December 31, 2021, the company had $1,850,000 in cash. The company had not distributed the proceeds from the sale to the shareholders.

## ANALYSIS

**A.  Subject matter jurisdiction**

At summary judgment, the court held that it had subject matter jurisdiction on the basis of diversity under 28 U.S.C. § 1332. It was clear then that Carl was not a citizen of Wisconsin. But to complete the record, the court directed plaintiffs to submit supplemental evidence showing where Carl was domiciled when he filed this case, that is, where he intended to live long term as of December 2019. Plaintiffs responded with additional evidence submitted with the declaration of Elizabeth Dykstra, one of Carl's daughters. Dkt. 86. The court finds that Carl was a citizen of Florida when this suit was filed, thus confirming that the court has subject matter jurisdiction on the basis of diversity.

**B. Improper dividends and payments**

The trust contends that Chris abused his status a majority shareholder taking improper payments or dividends and withholding dividends from the trust. The trust alleged five such incidents.

**1. The 2018 loan to Chris and indemnification for the La Crosse litigation**

The court concluded in the first summary judgment order that the company loans to Chris to pay the La Crosse judgment violated Wis. Stat. § 180.0832, which limits the circumstances under which a corporation may loan money to an officer or director. Dkt. 71, at 10. The loan also violated the company's bylaws, which required advance notice of contracts or transactions with directors, and approval by the non-interested directors. Dkt. 43-1, at § 5.06. The trust did not approve the loans.

But the question whether the trust was harmed by the improper loans turned on whether Chris paid them back, which Chris purported to do using amounts that would have been paid to him as indemnification from the company for his legal expenses in defending the La Crosse suit. So the was whether Chris was entitled to that indemnification. If he was, then the trust ultimately suffered no loss, and plaintiffs could not show a causal connection between any breach by Chris and their damages. *See Yates v. Holt-Smith*, 2009 WI App 79, ¶¶ 19–20, 319 Wis. 2d 756, 768 N.W.2d 213 (one element of breach-of-fiduciary claim is that breach caused damages to the plaintiff). In the second summary judgment order, the court concluded that Chris would have been entitled to indemnification for the defense of the official capacity claims against him, but not for the personal capacity claims. Dkt. 85 at 8.

So the issue left for trial was the amount of indemnification that Chris entitled to, which was the expense of defending the breach of fiduciary duty claims, apart from the other claims

6

against Chris not in his capacity as a shareholder or officer. The evidence on that issue was affected by the court's pretrial evidentiary ruling. Dkt. 131, at 2–5. The court granted plaintiffs' motion to exclude Chris from introducing the testimony of his trial counsel in the La Crosse case, Gary Antoniewicz, because Antoniewicz had not been timely disclosed as a witness. But the court allowed Chris to introduce the billing records from Antoniewicz's firm, Ex. 520 (Dkt. 111-1). And Chris testified about his own efforts relating to the litigation. Dkt. 154, at 119–23.

The billing records are not specific enough or detailed enough to determine which claim any particular billed activity related to. Chris's testimony was also very general, although he did estimate that he spent three percent or less of his time on work related to the stock purchase agreement and the rest of his time working through the financial documents. *Id*. at 122. But the time Chris spent on the case is not what matters; his attorneys billed for their own time, not Chris's. In any case, the financial documents that Chris was called upon to review were relevant also to the successful claims against Chris, because the court also awarded damages against Chris for the failure to pay a dividend to the trust. In his post-trial brief, Chris contends that the court should find that Chris was entitled to indemnification for between half and 95 percent of his legal fees. But he provides no sound basis for making that finding, with the exception of $7,949. Chris has shown that that amount was likely for work on a separate federal case that was dismissed in April 2016, for which Chris would be entitled to indemnification. The bottom line is that Chris did not provide evidence from which the court could determine the amount of indemnification to which he was entitled.

Chris contends that this failure of proof is the trust's problem, because the trust bears the burden on its claims that Chris breached his statutory or fiduciary duties to the trust. The

7

trust has the burden to prove the breach. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 2, 356 Wis. 2d 665, 670, 849 N.W.2d 693, 696. But it has met that burden: the trust has proven that Chris took more indemnification than he was entitled to, because he was not entitled take indemnification of all the fees incurred in the La Cross County case, as he conceded at trial. Dkt. 155, at 12–14. The court would hold the trust to the burden of proving the extent of its damages, too, if not for the evidentiary gap that Chris and his attorneys caused. The amount of Chris's rightful indemnification cannot be determined because his law firm did not keep billing records that distinguished among the claims, and given the imprecision of the years-old billing records, it is unlikely that attorney Antoniewicz could have clarified things even if he had been allowed to testify. The court agrees with the trust that the circumstances call for the application of the rule that a wrongdoer who causes uncertainty of proof cannot demand a more precise measure of damages. *Novo Indus. Corp. v. Nissen*, 30 Wis. 2d 123, 133, 140 N.W.2d 280, 285 (1966); *Brogan v. Indus. Cas. Ins. Co.*, 132 Wis. 2d 229, 240, 392 N.W.2d 439, 444 (Ct. App. 1986).

The court concludes that the illegal 2018 loan was not properly paid back because Chris was not entitled to take full indemnification for his legal expenses. The amount of indemnification paid by the company to Chris was $395,574.81. Chris has shown that $7,949 of that amount was for work on a dismissed case for which he was entitled to indemnification. The court deems the difference, $387,625.81, to be a constructive dividend to Chris, which will require a corresponding dividend to the trust of $232,575.49.

## 2. Payment of the $56,250 component of the La Crosse judgment with corporate funds

The evidence at trial established that Chris paid the $56,250 component of the La Crosse judgment against him with corporate funds, and that he did not repay that amount in any way. Dkt. 155, at 131–32. That amount should have been paid by Chris personally, so the court deems that amount to be a constructive dividend to Chris, which will require a corresponding dividend to the trust of $33,750.

## 3. The secret rent assistance

The court previously held that Chris breached his fiduciary duty to the trust by failing to disclose the secret rent assistance that the company was providing to Dahl. The court finds that the amount of the improper rent assistance was $191,500. That amount should have been paid by Chris personally, so the court deems that amount to be a constructive dividend to Chris, which will require a corresponding dividend to the trust of $114,900.

## 4. The October 2021 dividend, relating to work on the dealership property

In 2012, the roof of the dealership building was replaced, and the parking lot was repaved. Chris and Carl disputed responsibility for the expense. The corporation had a "triple-net" lease, which required the corporation to maintain the property and pay for repairs. But Chris contended that the work on the roof and the parking lot were "improvements" required by the city, and thus not the tenant's responsibility, but the landlord's. The matter was raised, but not resolved, in the prior federal litigation, which was dismissed during the pendency of the La Crosse litigation. The judge in the La Crosse litigation expressly held that the matter was disputed and not resolved in the La Crosse case.

Nevertheless, Chris operated as though the trust had incurred a "receivable" for the cost of the roof and parking lot work. In 2021, Chris instructed his accountant to create a promissory note from Carl to cover the cost of the roof and parking lot work, plus interest. Trial Ex. 114. Neither Carl nor anyone on behalf of the trust executed or agreed to the promissory note; indeed, neither Carl nor the trust ever saw it before this litigation. But in October 2021, Chris issued a dividend and applied the trust's share to the balance due on the promissory note. The dividend to the trust was for $197,580. Chris issued a corresponding dividend to himself in the amount of $329,300. The court finds that Chris wrongfully usurped the dividend of $197,580 declared to the trust.

### 5. Indemnification for this federal case

The corporation has paid Chris's legal bills in this case, approximately $280,000 at the time of trial. The trust contends that Chris is not entitled to indemnification for his legal fees in defending this case. *See, e.g.*, Dkt. 158 (trust's post-trial brief), at 4. Chris did not contest the point in his post-trial brief, Dkt. 160, so the court deems the matter to be conceded.

Chris is not entitled to indemnification under Wis. Stat. § 180.0851(1) because he has not been successful on the merits. He is not entitled to indemnification under § 180.0851(2) because the court finds that he has breached his duties to the corporation and that he has derived improper personal benefits from those breaches.

The legal fees should have been paid by Chris personally, so the court deems that amount of the fees paid are a constructive dividend to Chris, which will require a corresponding dividend to the trust. The precise amount of the fees and the corresponding dividend will have to be determined by the receiver.

## C. Civil theft

The trust contends not only that Chris violated his duties to the corporation, but that in taking unauthorized reimbursements and distributions he committed civil theft under Wis. Stat. § 895.446. This statute provides a private right of action for persons who suffer losses due to intentional conduct that would violate certain of Wisconsin's criminal statutes. The trust contends that Chris's conduct violates one of Wisconsin's theft statutes, Wis. Stat. § 943.20(1)(b). To prevail, the trust would have to prove, to a preponderance of the evidence, the three elements of that crime: (1) Chris, by virtue of his office, possessed the trust's money, (2) that he used or retained the money without the trust's consent and contrary to his authority, (3) and that he intended to convert it to his own use.

In light of the court's ruling, the court finds that Chris held funds—undistributed dividends—that rightly belonged to the trust; that he retained the funds over the trust's objection and contrary to his authority; and that he intended to keep the funds permanently for himself. But the parties dispute whether Chris's conduct was intentional in the sense required under the civil theft statute and the underlying criminal statute. The parties agree that "specific intent" is required, which means that the trust must prove the Chris knew that he was not entitled to retain the funds that should have been distributed to the trust as dividends. *Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 2002 WI 88, ¶ 28, 254 Wis. 2d 418, 432, 646 N.W.2d 822, 829.

The trust's post-trial brief sets out circumstances that would support a reasonable inference that Chris had the requisite intent in each of the five instances of unauthorized dividends or reimbursements. Dkt. 158, at 8–10. Chris responds to some of these circumstances in his post-trial brief, Dkt. 160.

Chris contends that he was acting with the advice of counsel in taking indemnification for the La Crosse case. Chris's evidence on this point was limited to his own testimony; he adduced no corroborating evidence from any attorney. The court agrees with the trust that it is implausible that a careful, competent attorney would have advised Chris that he was entitled to full indemnification for the La Crosse litigation. The billing records from his law firm do not separate the fees according to claims, which suggests that the firm had not carefully considered the question of whether Chris was entitled to only partial indemnification. But it is equally true that a careful, competent attorney would have advised Chris that he would have been entitled to indemnification of some of his legal fees, specifically those for claims brought against him as an officer of the corporation and on which he prevailed. The court concluded that the evidentiary gap favored the trust in the context of deciding the amount of indemnification that was improper. But that ambiguity works against the trust in proving that Chris knew that he was not entitled to indemnification for the La Crosse litigation. The court declines to find that Chris had the requisite specific intent in taking indemnification for the La Crosse case.

Chris contends that he lacked the requisite intent for the improper rent assistance payments because the trust did not formally approve the assignment of the lease to Dahl, and thus Chris was simply assuring that the corporation was meeting its obligations to pay the rent. This explanation is incredible. The corporation did not have any obligation to pay the $15,000 monthly rent subsidy for Dahl; Chris himself did. Chris consciously kept the rent subsidy secret, and the court finds that he knew that it was improper to use corporate funds to pay the rent subsidy. Chris also argues that the trust hasn't been damaged because it got the full $40,000 per month as rent. This argument is fatuous; the trust had negotiated to be paid $40,000 monthly rent. It was injured when Chris contrived to have the corporation pay part

12

of the rent, thus depriving the trust of its full $40,000 a month. The trust has proven the elements of civil theft for the improper rent subsidy.

As for the use of corporate funds to pay the $56,250 component of the La Crosse judgment, Chris contends, in his brief but not in any trial testimony, that the judgment erroneously entered judgment for that sum against Chris, rather than against the corporation itself. If that were so, the proper course of action would have been to ask the state court to amend the judgment, not to usurp corporate resources to pay it. The court finds that Chris's post-trial explanation is unsupported by any evidence. Chris may have felt somehow justified in having the corporation pay this portion of the judgment, but the court finds that Chris had the requisite intent: he knew that the obligation to pay the $56,250 was his, not the company's. The trust has proven its claim of civil theft for payment of this portion of the La Crosse judgment.

Chris does not challenge the trust's arguments about Chris's intent regarding compensation for the roof and paving expense. The court finds that Chris had the requisite specific intent regarding the 2021 dividend to cover the phony promissory note from Carl. Once again, Chris may have believed he was justified taking reimbursement for the roof repair and the paving, but he knew that the amounts were disputed and that he did not have the authority to simply take the money from the corporation with an illegitimate dividend derived from a phony promissory note. The trust has proven its civil theft claim for the 2021 dividend.

Chris offers no explanation at all for having the corporation pay his legal fees for this suit. Because the trust has proven its breach of fiduciary duty claims and generally prevailed in this litigation, Chris is not entitled to indemnification for his legal fees in defending this suit. But had Chris prevailed on the merits in this case, he would have been entitled to

13

indemnification. Although he will have to reimburse the corporation for the wrongfully paid fees, the court declines to find that Chris took indemnification knowing that he was not authorized to do so. The court finds that the trust has not proven a civil theft claim for the payment of Chris's legal fees for this suit.

The civil theft statute authorizes the court to impose enhance damages for civil theft up to three times that actual damages. § 895.446(3)(c). The court finds that Chris has demonstrated a consistent disregard of the rights of the trust as minority shareholder, and that his conduct demonstrates dishonesty in his accounting practices and disclosures to the trust. But this case does not involve outright embezzlement, and the amounts wrongfully taken emerged transactions that were, originally, legitimately debatable. The court concludes that it is appropriate to award the trust exemplary damages in the amount equal to the actual damages for the three incidents in which the court found that the trust has proven the elements of civil theft. The actual damages for civil theft are $346,230, which the court will order the corporation to pay as part of a constructive dividend to the trust. The court will also assess exemplary damages of $346,230 against Chris personally.

## D. Further remedies

### 1. Dissolution

One of the issues left for trial was whether the corporation should be judicially dissolved pursuant to Wis. Stat. § 180.1430(2)(b). That statute allows the court to dissolve the corporation if "the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent." Chris is unequivocally in complete control of the corporation. Based on the court's findings above, it's clear that Chris has oppressed the trust as minority shareholder by issuing improper dividends to himself without

corresponding dividends to the trust, by not being forthright in his dealings with the trust, and in some cases committing civil theft.

But perhaps the greatest potential oppression is Chris's failure to disburse the proceeds of the sale of the dealership. Whether retaining the proceeds is a further act of oppression turns primarily on the purpose of continuing the corporation's operations. Chris contended that the corporation should continue so that it could sell off the remaining inventory and service the outstanding warranties.

The remaining inventory—three specialized vehicles and some related equipment—does not warrant continuing the corporation. The value of these assets, about $45,000, is dwarfed by corporation's operating cost. There is simply no reason waste more money hoping to sell a few cars and equipment that have not sold in the three years since the corporation sold the dealership.

The outstanding warranties for vehicles sold by the dealership doesn't warrant continued operations either. Chris testified at trial and contends in his briefing that $1 million cash should be retained as a reserve against these warranties, based on a worst-case scenario that all of the warranties would be presented for refunds at once. There is no evidence that the worst-case is even remotely plausible. The evidence at trial was that the actual expense of servicing these warranties is minimal. The annual warranty expense in 2020 was $29,000; in 2021 it was $12,000; and in the first three months of 2022, the warranties actually resulted in $292 in refunds to the corporation.

Chris testified that one motive to continue the business after the sale of the dealership was simply his personal interest in keeping a hand in the car business. But that's no reason to maintain the corporation and to hold a million and a half dollars in it. The court does not find

at all persuasive Chris's testimony that he's simply changed the corporation's focus to a different form of precious metals, from those found in automobile components to those he purchases as a speculator. The court discerns, from the totality of the evidence, that Chris's main purpose in maintaining the corporation is to outlast his father. Chris hopes that, on Carl's death, that he can buy out the trust's interests for the amount specified in the La Crosse judgment, thus avoiding paying the trust its fair share of the proceeds of the sale of the dealership.

There is no legitimate purpose to maintain the corporation. Chris has and likely will continue to oppress the trust. The court will order dissolution and distribution of the corporations assets to the shareholders.

### 2. Receivership and accounting

The court, under Wis. Stat. § 180.1432, has the authority to appoint a receiver "to wind up and liquidate the business and affairs of the corporation." The requirement that the court hold a hearing before appointing a receiver has been satisfied because the issue of appointing a receiver was one of the issues addressed at trial and in post-trial briefing.

Chris has demonstrated his unwillingness to wrap up the affairs of the corporation. Evidence at trial showed that the corporate accounting has been erratic and unreliable. Carl has incurred expenses, paid by the corporation, that bear no legitimate business purpose. The court concludes that the appointment of a receiver is appropriate.

The court will appoint the receiver proposed by the trust, Rebecca DeMarb, rather than the one proposed by Chris. DeMarb has served successfully as a receiver in this court before and the trust has submitted a detailed proposed order to govern her work.

In marshaling the corporation's assets, the receiver is instructed to audit and account for the corporation's expenditures since this litigation began. That audit will thus account for the fees paid to Chris's counsel for this litigation which shall be returned by Chris to the corporation, and it will address the allegations of illegitimate post-trial expenditures that the trust alleges in its post-trial brief. The court will retain jurisdiction to decide disputes involving the work of the receiver.

ORDER

IT IS ORDERED that:

1. The corporation is to pay $578,805.49 to the trust, comprising:

   a. $232,575.49 as a constructive dividend for the improper indemnification of legal fees for the La Crosse case;

   b. $33,750 as a constructive dividend for the corporation's payment of the La Crosse judgment;

   c. $114,900 as a constructive dividend for the secret rent assistance;

   d. $197,580 for the amount applied to the unauthorized and unexecuted promissory note.

2. Chris Schneider, personally, is to pay the trust $346,230 as exemplary damages for civil theft.

3. The corporation shall be judicially dissolved pursuant to Wis. Stat. § 180.1430(2)(b).

4. Rebecca DeMarb is appointed as receiver to marshal the corporation's assets, wind down its operations, and disburse the net assets to the shareholders, as authorized in a separate order of appointment.

5. Chris Schneider is to reimburse the corporation for the legal fees paid for defending this lawsuit, in an amount to be determined by the receiver.

6. The clerk of court is to enter judgment.

7. The court will retain jurisdiction to resolve disputes involving the work of the receiver.

Entered February 7, 2023.

                                          BY THE COURT:

                                          /s/

                                          _____
                                          JAMES D. PETERSON
                                          District Judge