IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARL SCHNEIDER, individually, and as Trustee of
THE CARL AND NARCELLE SCHNEIDER TRUST,
and MARY SCHNEIDER, as Trustee of THE CARL
AND NARCELLE SCHNEIDER TRUST,

                 Plaintiffs,           OPINION and ORDER

  v.

                                                19-cv-980-jdp

CHRIS SCHNEIDER and HYBRID CAR STORE,
INC., f/k/a INTERNATIONAL MOTOR WERKS,
INC., and HONDA OF LA CROSSE, INC.,

                 Defendants.

---

This is a family business dispute over the control of the company now called Hybrid Car Store, Inc. Carl Schneider and Mary Schneider (Carl's daughter) sued Chris Schneider (Carl's son) under multiple state-law theories, alleging that Chris was mismanaging the company they jointly own and that he was taking money that belonged to them. Plaintiffs sought damages, dissolution of the company, and the appointment of a receiver. After a court trial, the court concluded that Chris had violated plaintiffs' rights in multiple ways, including three acts of civil theft, and awarded damages. The court agreed with plaintiffs that the company should be dissolved, and the court appointed a receiver.

Plaintiffs now move for attorney fees in the amount of $613,206 and costs in the amount of $112,781. Dkt. 170. The request for fees is based on Wis. Stat. § 895.446(3)(b), which allows for fee shifting on civil theft claims, and the request for costs is based on both the state statute and Federal Rule of Civil Procedure 54(d)(1), which awards costs to prevailing parties. For the reasons explained below, the court will approve a total of $264,435.79 in fees and costs.

ANALYSIS

Chris's objections to plaintiffs' request for fees and costs can be grouped into four categories: (1) plaintiffs forfeited fees and costs by failing to request them during trial; (2) plaintiffs have already been adequately compensated, so the court should exercise its discretion not to award fees or costs; (3) the court cannot award fees or costs because plaintiffs haven't shown how much of the fees and costs relate to the claims that allow for fee shifting; and (4) plaintiffs' fees are excessive. Chris does not challenge the reasonableness of counsel's hourly rates, so the court accepts those rates as reasonable.

Chris's objection to the timeliness of plaintiffs' requests applies equally to both fees and costs, so the court will consider that objection as it relates to both fees and costs in the same analysis. But Chris's other objections apply differently to fees and costs, so the court will consider those issues separately.

**A. Timeliness**

Chris contends that plaintiffs missed their opportunity to request fees and costs by failing to do so during trial. This contention does not require extended discussion. Federal Rule of Civil Procedure 54(d)(2)(B)(i) gives the prevailing party 14 days from the entry of judgment to move for fees; the rules do not set an explicit deadline to file a request for costs. Plaintiffs filed their requests within 14 days, so their requests are timely.

Rule 54(d)(2)(B) does contain a caveat that the 14-day deadline for fee motions does not apply if "substantive law requires those fees to be proved at trial as an element of damages." But Chris does not invoke Rule 54(d)(2)(B), let alone explain why it should apply in this case, so he forfeited the issue.

**B. Other objections to fees**

  **1. Discretion to award fees**

The default rule in federal court is that each side pays its own attorney fees, regardless of who wins or loses the case. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). But the default rule can be changed by statute. *Id.* All of plaintiffs' claims arise under state law, so Wisconsin law governs whether plaintiffs are entitled to fee shifting. *See Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). Plaintiffs rely on Wis. Stat. § 895.446(3)(b), which states that the prevailing plaintiff in an action for civil theft "may recover . . . [a]ll costs of investigation and litigation that were reasonably incurred." The "costs of investigation and litigation" include attorney fees. *Estate of Miller v. Storey*, 2017 WI 99, ¶¶ 48-49, 903 N.W.2d 759, 378 Wis. 2d 358.

Chris focuses on the word "may" in § 895.446(3)(b), which he says should be interpreted to mean that the court has discretion not to award fees. In one paragraph, he identifies three reasons why he believes fees should not be awarded in this case: (1) the court has already awarded substantial remedies, including exemplary damages; (2) plaintiffs did not prevail on all of their claims; and (3) the court did not discuss attorney fees in its post-trial decision, which suggests that the court did not believe they should be awarded.

The court is not persuaded by any of these reasons, none of which Chris explains. As for the first reason, Chris is correct that the court awarded plaintiffs substantial remedies against Chris for his unlawful and intentional misconduct, including approximately $346,000 in exemplary damages. But Chris points to no authority suggesting that attorney fees should not be awarded under § 895.446 when a prevailing plaintiff recovers substantial damages. Exemplary damages and attorney fees are separate remedies under § 895.446(3)(b) and (c),

and the statute allows a court to award both types of remedies. *See* Wis. Stat. § 895.446(3)(b) (a prevailing plaintiff "may recover *all* of the following" types of damages, including actual damages, exemplary damages, and litigation expenses) (emphasis added). The statute includes no language limiting the award of one remedy when another remedy is awarded.

As for Chris's second reason—that plaintiffs did not prevail on all of their claims—that issue that relates to the amount of the fees that the court should award, not whether the court should award fees at all. The court will address whether a reduced award is appropriate in the next section. As for Chris's third reason—that the court did not address the issue of attorney fees in its court trial decision—the court did not previously discuss attorney fees because plaintiffs had not yet raised the issue. And, as already discussed, plaintiffs were not required to raise it until after judgment was entered.

2. **Relationship of fees to civil-theft claims**

Plaintiffs ask for 100 percent of the fees and costs they incurred in this case, which total $613,206. State law governs whether plaintiffs are entitled to fee shifting, but plaintiffs contend that federal law governs whether the amount requested is reasonable, citing *Taco Bell*, 388 F.3d at 1076–77. That case's holding was limited to the "requirements of proof" in determining reasonableness, but lower courts have interpreted *Taco Bell* to stand more generally for the principle for which plaintiffs cite it. *See, e.g.*, *SFG Commercial Aircraft Leasing, Inc. v. Montgomery Equipment Company, Inc.*, 2019 WL 3941120, at *2 (N.D. Ind. 2019); *Johnson Controls, Inc. v. Edman Controls, Inc.*, 2012 WL 2415546, at *1 (E.D. Wis. 2012); *In re Yotis*, 2019 WL 8510293, at *5 (Bkrtcy. N.D. Ill. 2019). That is a reasonable extension of *Taco Bell*, and Chris neither challenge plaintiffs' view on this issue nor points to any differences in Wisconsin and federal law, so the court will apply federal law.

4

Chris contends that any fee award in this case must take account of two things: (1) the only statute that authorizes fee shifting is limited to claims for civil theft, and many of plaintiffs' claims were based on other legal theories; and (2) plaintiffs did not prevail on all of their civil-theft claims. The court agrees with this view. When a party is entitled to fees on some claims but not others, the court must analyze how closely related all of the claims are to determine whether it is reasonable to award the prevailing parties their full fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Murphy v. Smith*, 864 F.3d 583, 586–87 (7th Cir. 2017). If the nonfee-shifting claims are distinct, a reduction in fees is appropriate. *See Richardson v. City of Chicago, Ill.*, 740 F.3d 1099 (7th Cir. 2014). In assessing whether the claims are sufficiently related, courts focus on whether the claims arise out of the same facts so that there was significant overlap in counsel's work on both sets of claims. *See Vega v. Chicago Park District*, 12 F.4th 696, 700 (7th Cir. 2021); *Murphy*, 864 F.3d at 587–88.

In this case, plaintiffs asserted claims under one or more state-law theories that challenged the following conduct by Chris:

1) loaning himself company funds for the purpose of paying a personal judgment and then falsely asserting that he was entitled to be indemnified for almost $400,000 in legal fees related to that judgment;

2) failing to properly notice a shareholder meeting;

3) when selling the company's assets, choosing the offer that resulted in a lower purchase price for the assets but a larger personal payment to Chris;

4) concealing from plaintiffs that the sale agreement involved $15,000 in monthly "rent assistance" to be paid by the company to the buyer;

5) failing to distribute the trust's share of the sale's proceeds;

6) using corporate funds to pay $56,250 of a state-court judgment;

7) taking a $197,580 dividend that belonged to plaintiffs; and

      8) using corporate funds to pay Chris's legal bills in this case.

Plaintiffs contended that each of these actions was a breach of fiduciary duty and that the conduct comprising claims 1), 4), 6), 7), and 8) met the requirements for civil theft. Carl also asserted a claim in his personal capacity.

      At the summary judgment stage, the court resolved some issues in Chris's favor and some issues in plaintiffs' favor. In Chris's favor, the court dismissed claim 3) and Carl's claim that was brought in his personal capacity, and it concluded that Chris was entitled to charge the company for legal expenses arising out of claims asserted against him in his capacity as a company officer. Dkt. 85, at 6–7, 16. In plaintiffs' favor, the court determined that: (1) Chris violated state law by charging the company for legal expenses for claims brought against him in his personal capacity; (2) Chris violated state law by failing to provide notice of a shareholder meeting and of the shareholders' right to dissent to the sale; and (3) Chris breached his fiduciary duty to the trust by failing to disclose rental assistance that the company was providing to a third party. *Id.* Neither side sought summary judgment on the civil-theft claims, but the breach-of-fiduciary claim regarding improper rental assistance was based on much of the same evidence as the civil-theft claim regarding improper rental assistance.

      After the trial, the court determined the following:

- Chris failed to produce evidence regarding his state-court legal expenses that related to claims against him in his official capacity rather than his personal capacity, with the exception of $7,949. The remaining $387,625.81 that Chris loaned himself was a constructive dividend that should have resulted in a corresponding dividend of $232,575.49 to plaintiffs. This conduct did *not* meet all the elements of civil theft.

- Chris's use of company funds to pay $56,250 of a state-court judgment was a constructive dividend that should have resulted in a corresponding dividend to the trust of $33,750. This conduct *did* meet the elements for civil theft.

- Chris's use of company funds to make $191,500 in rent assistance payments to a third party was a constructive dividend that should have resulted in a corresponding dividend to the trust of $114,900. This conduct *did* meet the elements of civil theft.

- Chris was not entitled to claim for himself an October 2021 dividend to the trust in the amount of $197,580. This conduct *did* meet the elements of civil theft.

- Chris was not entitled to charge the company for any of his legal expenses in this case. This conduct did *not* meet all the elements of civil theft.

Dkt. 166. Based on Chris's breaches of fiduciary duty and civil theft, the court also granted plaintiffs' request to dissolve the company and appoint a receiver.

The bottom line is that the court found that most of Chris's alleged acts violated the law, but only three of those acts qualified as civil theft: (1) the use of $56,250 to pay the state-court judgment; (2) the rent-assistance payments; and (3) keeping the trust's October 2021 dividend. So the court must determine whether the three successful civil-theft claims are sufficiently related to plaintiffs' other claims to justify shifting all of plaintiffs' attorney fees.

Case law demonstrates that determining whether claims are sufficiently related is a fact-sensitive inquiry, and district courts have discretion in making the determination. For example, in *Vega*, the plaintiff prevailed on a discrimination claim but not a retaliation claim. After deducting billing entries that related only to the retaliation claim, the court determined that no further reductions were needed based on partial success because the unsuccessful claim "had a common core of facts or a factual nexus" with the successful claim, and the plaintiff relied on much of the same evidence for both claims. 12 F.4th at 704. In *Sottoriva v. Claps*, the plaintiff asserted a claim that his employer was violating the Due Process Clause by withholding some of his wages without adequate process. 617 F.3d 971, 974 (7th Cir. 2010). The plaintiff partially prevailed, obtaining an injunction that his employer "was precluded from withholding any amount in excess of $17,982.47 without first providing [the plaintiff] with a meaningful

Case: 3:19-cv-00980-jdp Document #: 222 Filed: 12/14/23 Page 8 of 16

hearing at which he could challenge this new sum." *Id.* The court concluded that a reduction for partial success was appropriate because the plaintiff's "failed effort to challenge the procedures through which the $17,982.47 debt was calculated was both sufficiently substantial and discrete." *Id.* at 976. And in *Murphy*, the plaintiff prevailed on federal claims that allowed for fee shifting and then successfully appealed the loss of a state-law claim that did not allow fee shifting. 864 F.3d at 588. The court held that the plaintiff could not recover fees for the successful appeal because it did not affect his success on his federal claims and was not related to work performed on the federal claims.

Plaintiffs contend that all of their claims were closely related because "they all involved a long-running pattern of oppressive conduct by the corporation's majority shareholder." Dkt. 171, at 10. But this looks at the different claims at too high a level of generality. It is true that all of plaintiffs' claims were about alleged acts of corporate misconduct by Chris. But the various acts were discrete. For example, plaintiffs' claims about improper rental assistance had little relation to their claims about Chris's improper indemnification of his legal fees or his handling of the asset purchase agreement. Plaintiffs' success or failure on any of those claims did not depend on the others, and there was no factual overlap.

One caveat: the court agrees with plaintiffs that their breach-of-fiduciary-duty claims largely overlapped with the civil-theft claims that arose out of the same conduct. For example, much of the work performed on the breach-of-fiduciary-duty claim for the improper rental assistance was also relevant for the civil-theft claim related to the improper rental assistance. The primary difference in those claims was a legal theory, and that's generally not enough to warrant a substantial fee reduction. *See Vega*, 12 F.4th at 703–04; *Richardson*, 740 F.3d at 1103. But plaintiffs are not entitled to fees for claims arising out of different conduct from plaintiffs'

successful civil-theft claims. *Vega*, 12 F.4th at 703 ("[T]he relatedness analysis centers on whether the unsuccessful and successful claims arose out of the same course of conduct." (internal quotation marks omitted)).

Plaintiffs say that Chris's various acts of misconduct were all relevant to their request for dissolution, which the court granted. But even if that's correct, it's irrelevant because plaintiffs' dissolution claim does not allow for fee shifting. The question is whether plaintiffs' successful civil-theft claims are sufficiently related to all of plaintiffs' other claims to justify shifting all of their fees to Chris. Plaintiffs haven't made that showing.

The next question is what a proper fee reduction should be. Plaintiffs contend that a 40 percent reduction would be appropriate because they prevailed on 60 percent of their civil-theft claims. That contention is flawed in two respects.

First, plaintiffs' contention rests on an assumption that the five civil-theft claims asserted at trial represent all the claims that plaintiffs asserted in the case, but that is obviously incorrect. At other points in the case, plaintiffs also asserted claims based on Chris's failing to properly notice a shareholder meeting, mishandling the asset purchase agreement, failing to notify plaintiffs about their right to dissent to the sale, and failing to distribute the trust's share of the sale's proceeds. Plaintiffs did not prevail on a civil-theft claim related to any of that conduct.

Second, plaintiffs' theory that they are entitled to 60 percent of their fees for prevailing on 60 percent of their claims is overly simplistic. Both the Supreme Court and the court of appeals have instructed district courts not to award fees simply by counting the number of successful claims. *See Sottoriva*, 617 F.3d at 976 (quoting *Hensley*, 461 U.S. at 435 n. 11). The

question is whether a fee is reasonable based on the work performed and the results obtained, not simply on the number of claims that succeeded or failed.

When a plaintiff is entitled to fees for work on a subset of claims, the court may determine a reasonable fee in one of two ways. If the plaintiff's billing records permit the calculation of the hours devoted to the claims on which the plaintiff prevailed, then the court may "determine the market rate for an hour of the lawyer's time and whether the fee generated by multiplying the hours by the rate is reasonable in relation to the value of the case." *Richardson*, 740 F.3d at 1103. If that isn't possible, "there is nothing to do but make an across-the-board reduction that seems appropriate" based on the evidence. *Id.* "[T]he district court has broad discretion to determine the appropriate reduction." *Montanez v. Simon*, 755 F.3d 547, 557 (7th Cir. 2014).

Plaintiffs have not attempted to separate the work they performed on their successful civil-theft claims from the work on all their other claims, so the court will have to estimate. Sixty percent is not a reasonable estimate. The issues underlying two of plaintiffs' three successful civil-theft claims were not litigated until trial. There were two rounds of summary judgment, but none of the parties' summary judgment submissions discussed Chris's use of $56,250 in corporate funds to pay a personal judgment or Chris's October 2021 withholding of plaintiffs' dividend. So much of the pretrial litigation had little to do with the civil-theft claims on which plaintiffs prevailed. This suggests that plaintiffs should recover significantly less than 60 percent of their fees.

Chris says that plaintiffs should not recover any fees because plaintiffs have not shown what portion of their fees was devoted to the successful civil-theft claims. But that approach would be inconsistent with circuit precedent, which directs district courts to estimate an

10

appropriate reduction when billing records are unhelpful. *See Richardson*, 740 F.3d at 1102 ("[W]hen the lawyer's billing records do not permit time to be allocated between winning and losing claims, estimation is inevitable.").

Chris also says that any award of fees would be inconsistent with the court's post-trial decision. He points to the portion that discusses his 2018 loan to himself for approximately $400,000 that he "paid off" by charging the company for his legal expenses in state-court litigation. The court had previously determined that Chris was entitled to charge the company for his legal expenses related to claims brought against him in his official capacity, but not claims brought against him in his personal capacity. Dkt. 85, at 6–7. But Chris failed to show that more than $7,949 of his legal expenses from the state-court litigation were related to the claims against him in his official capacity, so the court concluded that the remaining $387,625.81 in charged legal expenses should be deemed a constructive dividend. Dkt. 166, at 7–8. Chris says that the logic of the court's post-trial decision means that plaintiffs cannot be awarded any fees unless they point to billing records that are for the civil-theft claims only.

Chris is comparing apples and oranges. The court's discussion in the post-trial decision was not related to a request for attorney fees; it was about Chris's alleged violations of state law. The court had concluded that at least some of Chris's legal expenses from the state-court litigation should not have been charged to the company. Although the burden of proof normally rests on the plaintiff to prove her damages, plaintiffs in this case could not meet that burden because Chris failed to maintain records that separated work on official-capacity claims from work on personal-capacity claims. In that circumstance, state law holds that the defendant must bear the consequences for causing the uncertainty in proof. *See Novo Indus. Corp. v. Nissen*, 30 Wis. 2d 123, 133, 140 N.W.2d 280, 285 (1966); *Brogan v. Indus. Cas. Ins. Co.*, 132 Wis.

11

2d 229, 240, 392 N.W.2d 439, 444 (Ct. App. 1986). Here, the court is not attempting to determine the extent of wrongdoing by plaintiffs; it is simply trying to arrive at a rough estimate of the amount that would reasonably compensate plaintiffs' counsel for the time and resources devoted to plaintiffs' successful civil-theft claims.

The court concludes that one-third of plaintiffs' total attorney fees is a reasonable award under the circumstances. As already discussed, of the successful civil-theft claims, only the claim regarding improper rental assistance was a focus of the proceedings before trial. Of course, some of plaintiffs' pre-trial efforts related to the litigation as a whole, and plaintiffs were engaging in discovery on the civil-theft claims even if those claims were not a focus at the summary judgment stage. But no more than 20 to 25 percent of the pre-trial fees were devoted to matters related to the success of the civil-theft claims. At trial, the calculus changed somewhat. The trial focused more on the civil-theft claims, and plaintiffs were largely successful at trial, so they are entitled to a larger portion of trial-related fees. But 60 percent of trial and posttrial-related fees is still too high. Plaintiffs did not prevail on their largest civil-theft claim related to Chris's charging of his legal expenses, and some of the trial and post-trial work related to issues about dissolution and receivership, which are separate from civil theft. So plaintiffs would not be entitled to more than half of their trial and posttrial-related fees. Putting those two portions of the case together, the court concludes that a reasonable fee for plaintiffs' successful civil-theft claims is one-third of plaintiff's total attorney fees, or $204,402.

### 3. Excessive time

Nearly all of Chris's objections relate to the question of what fraction of plaintiffs' time was spent on the successful civil-theft claims. But Chris raises two other objections about the number of lawyers who were working on the case and the amount of time they spent. First,

12

Chris objects generally to plaintiffs having three lawyers attend the trial. Dkt. 182, at 15. Second, Chris objects to a charge of $490 (1.4 hours) in August 2020 for an associate's review of the complaint.[1]

The court will not further reduce the fee award based on these objections. "[T]he best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008). In this case, plaintiffs have already paid their legal fees. Dkt. 172, ¶¶ 58, 65. Moreover, a court's goal in reviewing a fee petition "is to do rough justice." *Vega*, 12 F.4th at 705. Courts need not nitpick every billing entry. *Id.* Perhaps plaintiffs could have made do with two lawyers at trial, but the trial lasted only two days, so using one fewer lawyer at trial would not have resulted in a substantial reduction in fees. Plaintiffs also explained that more lawyers than usual were working on the case because of COVID-19: "the availability of specific lawyers to work on the case at any given time given illnesses, the need to attend to family members' health needs and concerns, and the ability (or lack thereof) to be physically present for events conducted in the litigation was uncertain and fluid." Dkt. 172, ¶ 5. Chris neither challenges this view nor cites any evidence or authority that it was unreasonable for three lawyers to appear for plaintiffs at trial under the circumstances.

---

[1] Chris raises a third objection that the billing records for June 23, 2022, contain two entries for Doug Poland totaling 23 hours. But a review of those entries shows that there was a data-entry error. One of the entries is for attending the first day of trial and preparing for the second day; the second entry is for attending the second day of trial. Dkt. 172-2, at 166. Counsel explained in a supplemental declaration that the first entry should have been entered the previous day. Dkt. 186. The court will not deduct any hours for this mistake.

**C. Other objections to costs**

Plaintiffs seek $112,781.48 in costs under two sources of authority: Rule 54(d)(1) and § 895.446(3)(b). Each source of authority has different limitations, so the court will consider them separately.

### 1. Rule 54

There is a strong presumption that reasonable costs are awarded under Rule 54(d)(1) to the prevailing party. *Montanez*, 755 F.3d at 557; *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). This presumption for cost-shifting applies to all of the claims on which plaintiffs prevailed, not just to their civil-theft claims.

Plaintiffs prevailed on most of their claims, so Rule 54 supports a conclusion that plaintiffs are entitled to all or most of their costs. Defendants identify no basis to rebut the presumption. But that isn't the end of the matter because the court must determine which of plaintiffs' expenses qualify as "costs" under Rule 54. The meaning of costs under Rule 54(d) is the same as the meaning under 28 U.S.C. § 1920, which limits costs to "relatively minor, incidental expenses," such as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

Plaintiffs' requested costs include five categories: expert witness fees and costs ($67,150.00); e-discovery costs: ($19,736.04); transcript costs ($13,479.65); Westlaw legal research costs ($11,971.54); and witness and subpoena fees ($444.25). Transcripts and daily witness fees (which are set at $40 by 28 U.S.C. § 1821) are covered by Rule 54. *See id.* at 565–66. But expenses for experts and legal research are not covered. *See Abernathy v. E. Illinois R.R. Co.,* 940 F.3d 982, 994 (7th Cir. 2019) (witness fees are limited to the $40 per day set by

14

§ 1821, even for experts); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409–10 (7th Cir. 2000) (legal research is not recoverable under Rule 54).[2]

As for "e-discovery costs," plaintiffs don't explain what those are in their brief. In an accompanying declaration, counsel says that the costs were for "initial upload," "processing," "collection," and "maintenance and/or storage" of e-discovery. Dkt. 172, ¶ 99. At least some of those costs arguably qualify as exemplification or making copies, which are covered costs.[3] Because those costs are not obviously excluded under Rule 54, and Chris does not raise a specific objection to the e-discovery costs, the court will allow them.

The court concludes that plaintiffs are not entitled under Rule 54 to their expert witness fees ($67,150.00) or Westlaw legal research costs ($11,971.54). Chris does not raise any specific objections to the amount of plaintiffs' transcript costs ($13,479.65), e-discovery costs ($19,736.04), or witness and subpoena fees ($444.25), so the court will award plaintiffs those costs, which total $33,659.94.

**2. Wis. Stat. § 895.446(3)(b)**

The remaining question is whether plaintiffs are entitled to any of their expert witness fees or legal research costs under state law. Section 895.446(3)(b) allows the prevailing party to recover "[a]ll costs of investigation and litigation that were reasonably incurred, including the value of the time spent by any employee or agent of the victim." The meaning of "costs"

---

[2] Some expert deposition fees may be recovered under Federal Rule of Civil Procedure 26, *see Abernathy*, 940 F.3d at 994, but plaintiffs don't invoke that rule.

[3] Section 1920 recognizes the following categories of costs: (1) fees of the clerk and marshal; (2) transcripts; (3) printing; (4) copying and exemplification; (5) daily witness fees set by statute and witnesses; (6) docket fees; and (7) compensation of court-appointed experts. *See Taniguchi*, 566 U.S. at 565–66.

in § 895.446 is not restricted as it is in Rule 54. In fact, Wisconsin courts have interpreted it as including attorney fees. *Estate of Miller*, 2017 WI 99, at ¶¶ 48-49. So this court will construe "costs" in § 895.446(3)(b) in accordance with its ordinary meaning as a synonym for expenses. *See Taniguchi*, 566 U.S. at 573.

This understanding of costs is broad enough to cover expert witness fees and legal research costs. The statute states expressly that "costs" include "the value of the time spent by any employee or agent of the victim," which would include expert witness fees. To stay consistent with the attorney fee award, the court will approve one-third of the expert witness fees and legal research costs, for a total of $26,373.85.

## CONCLUSION

The court will award plaintiffs one-third of their $613,206 request for attorney fees, which equals $204,402. The court will also award $33,659.94 in costs under Rule 54 and $26,373.85 in costs under Wis. Stat. § 895.446(3)(b), for a total of $60,033.79 in costs.

## ORDER

IT IS ORDERED that plaintiffs' motion for attorney fees and costs, Dkt. 170, is GRANTED in part and DENIED in part. Defendant Chris Schneider is directed to pay plaintiffs $264,435.79 in litigation expenses.

Entered December 14, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge